**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WAYNE TRASK, BETH TRASK, his wife, )
and A.T., a minor, by and through her parents )
and natural guardians WAYNE TRASK and )
BETH TRASK, )
            )
            Plaintiffs, )
            )    Civil Action No. 12-340
         v. )    Judge Nora Barry Fischer
            )
OLIN CORPORATION, individually and )
trading and doing business as WINCHESTER, )
            )
            Defendant. )

## MEMORANDUM OPINION

## I.    INTRODUCTION

This is a products liability case involving an allegedly defective Winchester Model 94 firearm ("the Model 94"). Plaintiffs Wayne Trask, Beth Trask, and A.T. (a minor) filed this suit against Defendant Olin Corporation ("Olin") in the Court of Common Pleas of Indiana County, Pennsylvania on November 21, 2011. (Compl., Docket No. 1-2). Plaintiffs are three individuals who reside in Freeport, Pennsylvania. (*Id.* at 4–5, ¶¶ 1–3). Olin is a Virginia Corporation with its principal place of business in Clayton, Missouri, which does business as Winchester. (*Id.* at 5, ¶ 4). After being served with the Complaint on March 1, 2012, Olin removed the case to this Court on March 20, 2012. (Docket No. 1). Since removal, this Court has presided over a very lengthy discovery process. (Docket Nos. 15; 16; 23; 24; 29; 37; 46; 47; 48; 49; 58; 62; 63; 72; 73; 74; 79; 88; 90; 91; 93; 95; 96; 97; 104; 105; 107; 108; 109).

Presently pending before the Court is Olin's Motion for Reconsideration of this Court's Order dated October 15, 2013, (Docket No. 79), which, *inter alia*, ordered Olin to produce a list

1

of all prior incidents—regardless of the position of the hammer cock—involving a claim that a Model 94 discharged without a trigger pull, and to additionally produce all non-privileged documents relating to such prior events. (Docket No. 80). The matter was thoroughly briefed by both parties. (Docket No. 80; 84; 87; 89). The Court heard oral argument on November 18, 2013, the transcript of which was ordered to be prepared at the parties' request. (Docket No. 90). The transcript of the motion hearing was filed on January 16, 2014, (Docket No. 97),[1] and a redacted transcript was subsequently filed on February 6, 2014, (Docket No. 107). On January 21, 2014, Plaintiffs filed a Supplemental Memorandum of Law in Opposition to Olin's Motion. (Docket No. 101). Thereafter, Olin filed a Reply Memorandum on February 4, 2014. (Docket No. 106). Additionally, the parties have filed two Joint Status Reports at the Court's request, on December 17, 2013 and January 31, 2014. (Docket Nos. 95; 105). After reviewing the parties' December 17, 2013 Joint Status Report, wherein Olin indicated its willingness to produce a portion of the discovery referred to in the Court's October 15, 2013 Order, the Court ordered production of same, but otherwise reserved ruling on the pending Motion for Reconsideration.[2] (Order, Dec. 18, 2013, Docket No. 95). The parties also provided the Court with hard-copy transcripts of the six expert depositions that had been conducted as of December 24, 2013.

Upon consideration of the parties' filings, arguments, and submissions to the Court, and

---

[1] The filing of the transcript was delayed for approximately one month due to the parties' failure to timely submit their payments for transcription costs over the Christmas holiday. (Show Cause Order, Docket No. 96; Def's Resp., Docket No. 98).

[2] As is discussed *infra*, at note 14, Olin has subsequently mischaracterized this Order as largely disposing of its Motion for Reconsideration. (Def's Resp. to Pls' Suppl'l Memo., Docket No. 106). In fact, although that Order pertained to Plaintiffs' request for records of litigation and prior claims involving unintentional discharges of the Model 94 in which the firearm was in the half-cock position, the Order was silent as to discovery of materials involving a full-cocked or full-down hammer position. (Order, Dec. 18, 2013, Docket No. 95). The Court addresses these issues in the present Memorandum Opinion.

for the reasons set forth herein, Olin's Motion for Reconsideration [80] is DENIED.

## II.    BACKGROUND

In its pending Motion for Reconsideration, Olin contests the Court's Order requiring it to produce a list of all prior incidents involving claims that the Model 94 discharged without a trigger pull, and to additionally produce all non-privileged documents relating to each such prior incident. (Order, Oct. 15, 2013, Docket No. 79). Because the pending Motion is best understood within the larger context of this litigation, the Court will begin by tracing the history of this case and the discovery that has been conducted thus far.[3]

### A.    Initial Pleadings

#### 1.    Complaint

In their Complaint, Plaintiffs Wayne Trask, Beth Trask, and A.T. claim that on or about November 30, 2009, at 9:00 a.m., Wayne Trask and A.T. were on a hunting trip in Coral, Indiana County, Pennsylvania. (Compl. at ¶ 5, Docket No. 1-2). They carried Wayne Trask's Model 94, climbed a tree stand, and sat down. (*Id*. at ¶¶ 6–7). Plaintiffs allege that the firearm fell and struck a hard object on the gun's hammer, causing an unintended and/or accidental discharge. (*Id*. at ¶ 8). The fired bullet traveled through Wayne Trask's knee and hand, and then through A.T.'s hand. (*Id*. at ¶ 9). Wayne Trask sustained several serious injuries that included a supracondylar fracture of the femur, an open fracture of the upper end tibia, an open fracture to

---

[3] Because this Memorandum Opinion refers to the parties' counsel by name, the Court clarifies that Plaintiffs have been represented by Daniel Schiffman, Esq. of Schiffman & Wojdowski throughout this litigation. Jason Schiffman, Esq., also of Schiffman & Wojdoski, entered his appearance on May 14, 2013. (Docket No. 39). On July 15, 2013, Michael Trunk, Esq. and Shanin Specter, Esq., both of Kline & Specter, P.C., entered their appearances on behalf of Plaintiffs. (Docket Nos. 59–61).

Defendant Olin has been represented by numerous attorneys, including Henry Sneath, Esq., of Picadio, Sneath, Miller & Norton, and Joseph Guffey, Esq., of Husch Blackwell, LLP. (Docket No. 12).

the metacarpal bone, an open wound of the fingers and hand (with tendon involvement), acute post hemorrhagic anemia, and carpal tunnel syndrome. (*Id.* at ¶ 18). A.T. suffered the loss of a finger and an injury to her hand. (*Id.* at ¶ 22). They subsequently filed this action, along with Plaintiff Beth Trask, alleging three causes of action against Defendant Olin: (1) manufacturing, assembling and selling a defective and unreasonably dangerous firearm (*Id.* at ¶ 13); (2) negligence (*Id.* at ¶ 19); and (3) loss of consortium. (*Id.* at ¶ 25).

Plaintiffs initially claim at Count One that the Model 94 was defective in three ways: (1) the firearm malfunctioned and accidentally and/or unintentionally discharged without its trigger being depressed; (2) it had an ineffective or defective safety device and was improperly designed, lacking the necessary equipment to make it safe; and (3) it was not properly labeled with adequate warnings. (*Id.* at ¶¶ 14–15). Next, Plaintiffs claim at Count Two that Olin was negligent in three ways: (1) in designing and/or manufacturing and/or assembling and/or selling a firearm with inadequate and/or defective safety devices and measures; (2) in designing and/or manufacturing and/or assembling and/or selling a firearm with a design which would permit it to accidentally discharge without the trigger being depressed; and (3) in failing to warn of the dangers. (*Id.* at ¶ 19). Wayne Trask and A.T. allege that they have been disfigured, incurred significant medical bills, and suffered great pain, mental anguish and embarrassment. (*Id.* at ¶¶ 17, 22, 23).[4]

---

[4] Since the Complaint was filed, Wayne Trask has undergone additional medical procedures, including the amputation of a leg, which now requires prosthesis. (Mot. Hr'g Tr., Nov. 18, 2013, at 44–45, Docket No. 107). Due to the extent of these injuries, Olin determined during the course of discovery that its $25 million excess coverage policy is implicated. (*Id.* at 43:1–17).

In this regard, Plaintiffs' expert Jay Jarrell, an Accredited Personnel Diplomat and Certified Personnel Consultant has calculated that Wayne Trask's lost earnings total $745,562. (Jay Jarrell Expert Report, Apr. 8, 2013, Ex. A). More significantly, Mr. Jarrell estimated that

2.     Answer

After removing the case, (Docket No. 1), Defendant Olin filed its Answer on March 26, 2012. (Docket No. 4). In its Answer, Olin admitted that it had been in the business of manufacturing and selling Winchester firearms up until 1981. (*Id.* at 3, ¶ 11). Olin otherwise denied liability. (*Id.* at 3–5). Additionally, Olin asserted numerous defenses, including, *inter alia*:

> 5. . . . [I]f there was any defect or deficiency in the product made the basis of this lawsuit as of the time of the incident alleged, such defect or deficiency did not relate to the original design, manufacture or sale of the product or of any procedures undertaken by Olin, but, on the contrary, is the result of the material alteration, the misuse, abuse, improper storage, or other actions or omissions on the part of Plaintiffs and/or others for whom Olin is not and cannot be responsible.
>
> . . .
>
> 9. Olin denies that the product made the basis of this lawsuit had any inherent design defect but if there existed any inherent design defect with respect to the product, such defect did not cause the product not to function in a manner reasonably expected by an ordinary consumer of firearms.
>
> . . .
>
> 11. If the damages alleged in Plaintiffs' Complaint were caused by the use of any product or products manufactured or sold by Olin, adequate warnings and instructions were devised to communicate with the person or persons best able to take precautions against the potential harm, if any.

(*Id.* at 6–8, ¶¶ 5, 9, 11).

**B.    Discovery**

This Court held a Case Management Conference pursuant to Federal Rule of Civil Procedure 16 on April 26, 2012. (Docket No. 15). A Case Management Order was subsequently

---

Wayne Trask's Life Care Plan in current dollar costs amounts to $3,654,484, which equals $7,767,148 in future dollar costs. (*Id.*, Ex. B).

entered, setting forth a schedule for fact discovery, which was to be completed by February 28, 2013. (Docket No. 16). That deadline was later extended to May 31, 2013. (Docket No. 29). The Court has subsequently granted several other extensions for specific, limited fact discovery. (Docket Nos. 46; 63; 79).

1. Interrogatories and Responses

During the summer of 2012, both parties served Interrogatories and Responses. (Docket Nos. 41-2; 41-3; 41-5). Wayne Trask's Answers to Olin's Interrogatories, which were served on June 23, 2012, stated that he received the Model 94 from his father, who had originally purchased the firearm from Bullseyes Fire Arms in Homer City, Pennsylvania on an unknown date. (Pl. Wayne Trask's Answers to Def's Interrog. at 10, Docket No. 41-5). He further answered that on the date of the incident, he observed the Model 94, which was in the half-cock safety position,[5] fall from the tree stand. (*Id.* at 13). The gun hit a hard surface and then fired, without any contact to its trigger. (*Id.*). An examination of the marks on the gun, "including deformation of its hammer," indicate that the gun's hammer had "impact[ed]" the hard surface. (*Id.*). Additionally, Wayne Trask stated that the firearm "does not contain any warnings affixed to it concerning its propensity to fire despite the half-cock safety being engaged." (*Id.*).

Plaintiffs served their Interrogatories on Olin on June 7, 2012. (Pls' Interrog., Docket No. 41-2). The Interrogatories included three questions—Numbers 7, 17, and 18—that are relevant to the present Motion. Interrogatory Number 7 requested information regarding Olin's "knowledge of the existence of <u>any</u> alleged defect or defective condition of [the Model 94]." (*Id.* at 6–7, ¶ 7)

---

[5] The Model 94's hammer, which is exposed, can be in three possible positions: full-down (or uncocked), full-cocked, or half-cocked. (*See* Powell Report at 7, ¶ 5.14, Docket No. 106-1). The Model 94's half-cock notch is designed to prevent an inadvertent pulling of the trigger. (Hildebrandt Expert Report at 4, Docket No. 101-1).

(emphasis added). Olin responded with objections that the Interrogatory was vague and ambiguous, and that answering it imposed an undue burden. (Docket No. 41-3 at ¶ 7). However, Olin also stated "there was no defect or defective condition in the Subject Rifle at the time it left Olin's custody, possession and control, and, therefore, there is no such information." (*Id.*).

Interrogatory Number 17 requested information regarding "<u>any</u> complaints either oral or written, either made directly to you or filed in any Court of Law, by or on behalf of any users of the product, similar products or comparable products for a period of ten (10) years prior to the date of the accident to the present time which allege accidental discharge of the firearm." (Docket No. 41-2 at 10, ¶ 17) (emphasis added). Olin again objected that the interrogatory was vague and ambiguous, and that it was not calculated to lead to the discovery of admissible evidence. (Docket No. 41-3 at 15, ¶ 17). Olin further responded by identifying one case, *Keene, et al. v. Gronmeier, et al.*, No. 09LE-CV00151 (Mo. 2d Cir. Ct., Lewis County). (*Id.*).

Finally, Interrogatory Number 18 requested information regarding <u>all</u> complaints or negative comments Olin had received, as well as information as to how Olin keeps track of complaints. (Docket No. 41-2 at 11, ¶ 18) (emphasis added). Olin responded with objections to the interrogatory, but further stated that "[f]or the past 10 years, Olin has not recorded any complaints with respect to the Model 94, and has become aware of "complaints" only by the filing of a lawsuit as identified in Interrogatory 17." (Docket No. 41-3 at 15–16, ¶ 18).

### 2. Discovery Related to Prior Claims against Olin

Upon receiving Olin's Responses in July 2012, Plaintiffs' counsel "relied on the Defendant's answers in good faith" until the spring of 2013, at which time Plaintiffs' counsel became aware of litigation in other cases involving the Model 94 firing without a trigger pull. (Docket No. 52 at 29). Specifically, Mr. Daniel Schiffman joined the American Association for

Justice in April 2013 and began searching that Association's exchange database in May 2013. (*Id.*). Through these searches, Plaintiffs unearthed a "volume of cases out there with defects or allegations of defects of this firearm's propensity to accidentally discharge." (*Id.* at 29–30).

Elaborating on Plaintiffs' independent research into prior allegations and litigation, Mr. Jason Schiffman avers the following: Plaintiffs searched multiple databases, including PACER, the American Association for Justice Exchange Database, Westlaw, TrialSmith, trade magazines, and scholarly article reviews, in addition to contacting individuals who had formerly testified as expert witnesses or been retained as consultants on these matters. (Decl. of Jason Schiffman, Oct. 28, 2013, at 3, ¶¶ 8–9, Docket No. 84-8). These searches, however, were complicated by factors including confidentiality orders, practical difficulties and expenses associated with obtaining the paper court files, and the time delays caused by requesting records from a National Archive. (*Id.* at ¶¶ 10–13). As a result of these delays, Plaintiffs uncovered documents relating to matters similar to the one at hand after the close of fact discovery. (*Id.* at ¶ 11).

Mr. Jason Schiffman wrote a letter on May 14, 2013 to Mr. Guffey, in which he confirmed a conversation the two had previously that day. (Docket No. 41-4). He then requested "additional responsive information and/or documents" of "other incidents involving unintentional discharges of a Winchester Model 94." (*Id.*). He went on to assert that Interrogatories 7, 17, and 18, read together with the Complaint, request information and/or documents regarding other incidents involving unintentional discharges of Model 94 rifles, irrespective of the hammer position of the involved rifle or the area of the firearm which received impact. (*Id.* at 2–3).

Concurrently, Plaintiffs' Expert, Charles Powell, completed a preliminary Engineering Report, which he dated May 15, 2013. (Docket No. 42). Beyond Mr. Powell's conclusions as to

defects specific to the gun at issue in this case, Mr. Powell references his consulting work on prior cases involving the Model 94, identifying such cases and summarizing what prior testing has shown. (*Id.* at 4–9). He opines that through its involvement in prior litigation and its own testing, Olin was aware that unintentional discharge caused by a small amount of force was foreseeable. (*Id.* at 7–8). Of note, Mr. Powell provides case names, but not docket or court information. (*Id.* at 5). The cases he lists are: *Wilkerson v. Olin*; *Irons v. Olin*; *Fowler v. Olin*; *Mason v. Olin*; and *Hauer v. Olin*. (*Id.*).

On May 16, 2013, Daniel Schiffman contacted Olin's counsel to discuss production of prior claims of unintentional discharge. (*Id.* at 3, ¶ 8). Mr. Schiffman avers that during this conversation, Mr. Guffey "represented that he was unaware of any claims that were similar in nature to the instant case." (*Id.* at 3, ¶ 9).

Mr. Guffey next sent a letter via email on May 17, 2013, responding to Jason Schiffman's May 14, 2013 letter. (Docket No. 41-8 at 2–3). Mr. Guffey stated that, after reviewing Plaintiffs' request, "I am now taking your May 14, 2013 letter as an amendment to your earlier request for production of records dated April 25, 2013. In accordance with your letter, I will now look for and produce any documents as described in your letter[.]"[6] (*Id.*). However, Mr. Guffey went on to limit the scope of this request for production: "you are agreeing that Olin does not have to produce any other records at this time except [as to two other matters irrelevant to this Motion]." With respect to Plaintiffs' request for information and documents regarding prior claims of unintentional discharge, Mr. Guffey stated: "I do not agree with you that you are entitled to any and all 'unintentional discharges,' which is an 'undefined term.'" (*Id.* at 3). Mr. Guffey went on:

---

[6] The parties contest the effect of this statement. *See infra* § IV.B.1.

"There is no supplemental information for interrogatories [*sic*] numbers 7 and 18," but he agreed to supplement Olin's responses to Interrogatory Number 17. (*Id.*).

Daniel Schiffman responded for Plaintiffs within hours, stating:

> [O]ur research has uncovered many previous lawsuits filed against Olin Corporation involving unintentional discharges of the model 94 caused by impact to the hammer, butt stock, or other area of the firearm. You have indicated that you are unwilling to respond to our discovery requests regarding the same. We are seeking court intervention.

(Docket No. 41-10). Mr. Guffey replied quickly:

> Dan, I don't think you understand my letter. Olin WILL produce what it has knowledge of responsive to your discovery. I don't know what your research shows but I have agreed to supplement Olin's answer as requested by your [Interrogatory No.] 17. You can file whatever you want but you will be wasting your time and wasting the court's time. Given your firm's delay in seeking a supplement to the discovery filed over a year ago and the fact that I already said in writing that I would supplement over objections, I will seek sanctions for having to respond to a frivolous motion given I have agreed to supplement. Your discovery request expressly sets forth the time period requested and so you will get the supplemental answer. I don't know what else you expect me to provide you.

(*Id.*). The parties conferred, and per Plaintiffs, Olin took the position that it had no duty to provide information related to accidental discharges unless the firearm at issue was in the half-cock position. (Docket No. 40 at 3, ¶ 10).

3.     Plaintiffs' Motion to Compel

On May 18, 2013, Plaintiffs filed their motion to compel, seeking further response to Interrogatory Number 7. (Docket No. 40). The matter was subsequently briefed, (Docket Nos. 41; 45), and the Court heard argument on June 7, 2013 (Docket Nos. 48; 52).

Pursuant to their motion, Plaintiffs argued Olin had failed to sufficiently respond to Interrogatory Number 7, which requested information as to all <u>allegations</u> of defects of which Olin had knowledge. (*Id.* at ¶ 4). To that end, Plaintiffs pointed out the cases they had uncovered through their own research, and which Olin had not provided. (*Id.* at ¶¶ 6, 9, 16–17 (citing *Huber v. Olin Corp.*, No. 85-CV-03, (Wis. Cir. Ct.); *Cameron v. Olin Corp.*, No. 10-cv-1521 (D. Conn.); *Fortier v. Olin Corp.*, 840 F.2d 98 (1st Cir. 1988); and *Irons v. Olin Corp.* (no citation given))). Moreover, Plaintiffs rejected Olin's position that only half-cock cases were discoverable because the hammer position is irrelevant to Plaintiffs' theory of the Model 94's design defect, (*Id.* at ¶ 8), pointing to Mr. Powell's Report, (*Id.* at ¶ 13).

Olin countered that Plaintiffs' latest request constituted an entirely new interrogatory, characterizing Plaintiffs' motion to compel as an attempt to circumvent the discovery deadlines. (Docket No. 41 at 1). It also stressed that Plaintiffs had always maintained that Wayne Trasks's firearm was in the half-cock safety position at the time of the incident and that the Incident Rifle had an "ineffective and/or defective safety device." (*Id.*).

While the motion to compel was pending, Olin served its First Supplemental Answer and Objection to Plaintiffs' Interrogatories on June 4, 2013. (Docket No. 87-6). Therein, Olin provided the following information in response to Interrogatory 17:

> Olin is providing a limited response herein regarding lawsuits filed against Olin within the last ten (10) years involving allegations that a Model 94 discharged after being dropped while the hammer was in the full-down and/or half-cock position. These are as follows: (1) *Hauer*—a lawsuit filed on May 14, 2009, case settled; (2) *Cameron*—a lawsuit filed on August 6, 2010, case settled; and (3) *Keene*—Olin received notice of the incident on or about January 2007 and was formally named as a defendant in the Amended Petition filed on January 7, 2010. The *Keene* case was dismissed without prejudice.

(*Id.* at 3–4).[7]

The motion to compel was resolved through a stipulation. Following the Motion Hearing, Mr. Guffey avers that Plaintiffs' counsel contacted Olin and provided ten specific cases about which they wanted more information, as a way to resolve the dispute. (Docket No. 87-1 at 2, ¶ 9). Mr. Guffey points out that Plaintiffs' counsel were aware at the time they made this request that more than ten cases had been filed against Olin. (*Id.*). On the other hand, Mr. Daniel Schiffman declares that during this discussion, "Mr. Guffey again stated that he was not aware of any claims that were similar to the instant case and that any previous claims of unintentional discharge were unlike Plaintiffs' case." (Docket No. 84-7 at 3, ¶ 11).

The parties exchanged emails on June 11, 2013. (Docket No. 87-7). Daniel Schiffman first wrote to Mr. Guffey, referencing their prior conversation and stating that "[Plaintiffs] are seeking the names of the courts, the docket numbers, and a brief synopsis of the alleged facts" for ten specific cases. (*Id.* at 2). Mr. Guffey responded as follows:

> I spoke with my client and Olin is willing to resolve the discovery dispute raised by Plaintiffs' Motion to Compel by agreeing to provide the following information:
>
> 1. Any response and information from Olin is subject to Olin's previously raised objections in Interrogatory #7 and that any response from Olin does not waive its objections, including but not limited to, the objection that these prior cases are not substantially similar. The issue of whether the prior cases are substantially similar to the facts alleged in the Trask case will be reserved for motion practice at a later date;
>
> 2. If information is known by Olin, Olin will provide for the

---

[7] Of note, Mr. Powell listed the *Hauer* case in his Report (Docket No. 42 at 5). *Cameron* was identified in Plaintiffs' Motion to Compel as one of the cases that counsel had independently identified. (Docket No. 40 at 5). Olin had disclosed the *Keene* case in its initial Response (Docket No. 41-3 at 15).

ten (10) cases (see below) requested in our telephone conversation on June 10, 2013 the following information— the names of the courts and docket or cause number;

3. Olin will not produce any documents in response to [Interrogatory Number] 7;

4. Olin will not provide a brief synopsis of the alleged facts since you will be able to locate the official pleadings and gather the alleged facts for yourself.[8]

5. The ten cases are: Irons; Taggert; McCown; Gravening; Mikulis; Huber; Mason; Fowler; Long; Wilkerson.

(Docket No. 87-7 at 2).

On June 12, 2013, the parties filed their Joint Stipulation allegedly resolving Plaintiffs' pending motion to compel. (Docket No. 50). In this Stipulation, Plaintiffs agreed to dismiss their motion in return for Olin providing them with case citations for ten claims, which Plaintiffs had previously identified by party name. (Docket No. 84-7 at 3, ¶ 12). The Court therefore ordered that the motion be terminated as moot. (CM/ECF, Text Order, June 13, 2013).

4. Discovery Subsequent to Parties' Stipulation

After receiving the list of cases from Olin pursuant to their stipulation (Docket No. 50), Plaintiffs "immediately began to locate and order available case materials from state courts and National Archives databases across the country. The ordered case materials arrived over the course of several months starting in July of 2013, after the close of fact discovery." (Docket No. 84-7 at 3, ¶ 13). Mr. Trunk averred that from June through September 2013, Plaintiffs' counsel engaged in "an ongoing mission" to courts, plaintiffs' attorneys, and experts around the country to uncover prior cases involving alleged defects of a Model 94. (Mot. Hr'g Tr., Nov. 18, 2013, at 30:17–23, Docket No. 107).

_____

[8] The Court notes that this is not an appropriate objection. FED. R. CIV. P. 33(b).

In reviewing these case materials, Plaintiffs learned about Product Liability Accident Reports that were prepared by Olin for claims related to unintentional discharge, although Olin had not produced said Reports to Plaintiffs in this case. (Docket No. 84-7 at 3, ¶ 16). Plaintiffs additionally located a letter from Jay P. Jarvis, Olin's Director of Arms and Engineering, preparing an estimate for an "additional safety" for the Model 94 pursuant to a 1976 case, *Tost v. Winchester*, which Olin had not produced to Plaintiffs. (Docket No. 84-7 at 3, ¶ 15).

Thereafter, Olin voluntarily supplemented its disclosures to Plaintiffs sometime following the close of fact discovery and the appearance of Kline & Specter. (Docket No. 84 at 4 n.1). Plaintiffs aver that Olin produced 1,755 pages of documents, including drawings that show an alternative design for the Model 94's safety apparatus from 1950. (*Id.*).[9]

The parties then exchanged emails in September 2013 that have subsequently been submitted to the Court, evidencing that Mr. Trunk requested discovery of "all non-privileged evidence relating to prior claims or incident reports of Model 94 discharges without a trigger pull." (Docket No. 84-2 at 2).

### C.      Motion and Briefing on Olin's Motion to Compel Inspections (Docket No. 75)

On September 26, 2013, Mr. Sneath contacted the Court regarding a discovery dispute that had arisen regarding a request that Olin's experts conduct additional examinations of the Model 94 and tree stand. Consequently, the Court held a Telephonic Status Conference (TSC) that afternoon, with Mr. Trunk, Mr. Daniel Schiffman, and Mr. Jason Schiffman representing the

---

[9] Additionally, Mr. Guffey informed Plaintiffs that this case might be covered by Olin's $25 million excess insurance policy, (Docket No. 107 at 43:7–8), whereas Mr. Guffey had stated at the June 7, 2013 hearing that Olin was self-insured and did not have an insurance carrier. (Docket No. 52 at 41:18–53:1).

Plaintiffs, and Mr. Sneath and Mr. Guffey representing Olin. (TSC Tr., Sept. 26, 2013, Docket No. 74).

During this Conference, Mr. Sneath argued that Olin had requested that new defense consultants examine the gun and tree stand in preparation of their projected expert reports. (*Id.* at 4:5–19).[10] Plaintiffs had exclusive control over this evidence, however, and had denied Defendant's request for reinspection. (*Id.* at 5:7–6:3). Mr. Trunk explained that when Counsel for Olin had contacted Plaintiffs requesting this discovery,

> My response was I'd be willing to allow it, but I want you guys, the Defendants, to also agree to give me some discovery past the fact discovery period in the way of prior case history. We have very little from them on prior allegations and prior claims of unintentional discharge of this gun. We've been finding a lot of it on our own.
>
> But frankly that's something that the Defendants have in their possession and we could get from them. And so my suggestion was we can agree to both of us doing these things beyond fact discovery. We give the safety inspection; you give us the prior case

---

[10] By way of background, Olin had previously engaged a consultant to examine the gun. On February 8, 2012 (before the Complaint was filed, Olin employee and recurrent expert Paul Szabo examined the Model 94 to determine its physical status. (Docket No. 75 at 2). He was permitted to dissemble the gun, take photos, and record the inspection by video. (Docket No. 77 at 5). On November 8–9, 2012, Olin had access to the physical evidence during depositions of fact witnesses. (*Id.* at 6). On December 12, 2012, Olin consultant Dr. Robert Block and Plaintiffs' expert Charles Powell performed metallurgical testing on certain components of the firearm. (Docket No. 75 at 2). Subsequently, Dr. Block and Mr. Powell performed hardness testing. (Docket No. 77 at 7).

With respect to prior testing of the tree stand, Plaintiffs claim they offered to let Defendant inspect the scene of the incident and the tree stand around February 2012, even arranging permission to enter the land, but Defendant declined. (Docket No. 77 at 5). On August 21, 2012, Mr. Szabo inspected the tree stand. (Docket No. 75 at 2). This inspection lasted several hours, and Olin's representatives took many photographs and used an exemplar rifle and component parts. (Docket No. 77 at 6). On January 24, 2013, Olin again inspected the tree stand to evaluate the accident scenario to which Plaintiffs testified. (Docket No. 75 at 2). Finally, on May 2, 2013, Dr. Block and Mr. Powell examined the cut section of the tree stand ladder in Norman, Oklahoma. (Docket No. 75 at 3).

> history on prior claims against this particular gun.
>
> And we had a call on it yesterday, but they disagreed with my position and won't agree to pass on any more prior case history.

(*Id.* at 8:4–18).

In response, Mr. Sneath asserted, "these are documents that were never asked for before. So . . . there's no issue that we didn't produce something that we were supposed to." (*Id.* at 8–9). Mr. Sneath averred that producing the records requested would be a "voluminous production." (*Id.* at 9). However, Mr. Sneath went on to argue that Plaintiffs' request for litigation records "highlights the reason why we want to inspect the gun right now." (*Id.*). He articulated Olin's belief that since Kline & Specter joined as Plaintiffs' counsel, the Plaintiffs' theory of the case has evolved such that the case is now "going in a different direction, and that's why we brought on additional consultants who are now going to be prepared to address the way these theories appear to be developing." (*Id.* at 10).

Following the TSC, Olin filed a "Motion to Compel Inspection." (Docket No. 75). In this Motion, Olin asked the Court to order that:

> Plaintiffs shall make the subject Model 94 firearm, ammunition and tree-stand available for Olin's consulting and liability experts to physically examine and take photographs of this physical evidence, disassemble the subject firearm, measure and take photographs of its component parts. The parties are further ordered to confer and agree on a mutually agreeable time and place for this inspection to occur, between October 15 and November 15, 2013.

(Def's Proposed Order, Docket No. 75-1). Olin argued that this additional discovery was necessary in light of Plaintiffs' expanding legal theories, and that Defendant consequently should be permitted to inspect the physical evidence "to evaluate the veracity of these claims." (Def's Mot. to Compel Inspection at 5–6, Docket No. 75).

In response, Plaintiffs initially pointed out that Olin's request for fact discovery was untimely under Rules 34 and 37 because fact discovery had closed, would prejudice Plaintiffs by requiring them to pay $4,000 to $5,000 to have their own experts present, and was unwarranted because Plaintiffs' theory of the case had not changed. (Pls' Reply at 2–3, 10–15, Docket No. 77). Alternatively, Plaintiffs requested that, if the Court was to permit Olin to have further fact discovery in the form of inspections, then the Court should also grant Plaintiffs additional fact discovery in the form of production of prior incidents of accidental discharge involving the Model 94. (*Id.* at 15). Plaintiffs presented significant support for their contention that such discovery is reasonably calculated to produce admissible evidence. (*Id.* at 16–19).

### D.     Court Order

On October 15, 2013, the Court issued the following Order, which had been offered by Plaintiffs as an alternative to denying Olin's request for additional discovery outright. (Docket No. 79). This Order reopened fact discovery for both parties, granting each parties' requests for additional discovery. The Order read:

> It is hereby ORDERED that [Defendant's Motion to Compel Inspections] is GRANTED.
>
> It is further ORDERED that non-destructive inspection of the firearm, tree stand, and ladder will take place at a time and place agreed upon by the parties within 30 days.
>
> It is further ORDERED that Olin will, within 30 days, produce to plaintiffs a list of all prior incidents involving a claim that the Model 94 firearm discharged without a trigger pull. Olin will further produce within 30 days all non-privileged documents relating to each such prior incident. In the event Olin believes a document is privileged, Olin is to provide plaintiffs with a privilege log identifying the date and type of document, author, recipients, and a brief description of the document.

(*Id.*).

### E.    Defendant Olin's Motion for Reconsideration

On October 18, 2013, Defendant Olin timely filed its "Motion for Reconsideration of Order Dated October 15, 2013."[11] (Docket No. 80). The matter was fully briefed, (Docket Nos. 84; 87; 89), and the Court heard oral argument on November 18, 2013, (Docket Nos. 90; 97; 107).[12]

Olin argues that the Court should reconsider its Order because of the "manifest injustice" of permitting Plaintiffs to receive additional fact discovery. (Mtn. Hr'g Tr., Nov. 18, 2013, at 16:10–12, Docket No. 107). To this end, Olin argues the following points: (1) the Court's October 15, 2013 Order was procedurally improper because Plaintiffs never served a proper Rule 34 request for production (RPD) and similarly failed to file a motion requesting the relief granted, (Docket No. 80 at 5); (2) Plaintiffs are not entitled to the requested discovery in that the request is overly broad and would substantially burden Olin, (Docket No. 80 at 7–9; Docket No. 87 at 4); and (3) Plaintiffs failed to show good cause to reopen fact discovery, (Docket No. 80 at 7; Docket No. 87 at 2–3, 5; Docket No. 107 at 8, 13, 15).[13]

In response, Plaintiffs contend that reconsideration is not warranted here. (Docket Nos. 84; 89). To that end, Plaintiffs assert that although they did not file a formal motion requesting discovery, they twice requested said discovery from Olin and also informed the Court of their request at the September 26, 2013 TSC. (Docket No. 84 at 7–9). Plaintiffs further argue that they

---

[11] Olin's Motion for Reconsideration was made within seven days of the Court's Order, as required per the Court's Practices and Procedures. *See Practices and Procedures of Judge Nora Barry Fischer*, Eff. Feb. 5, 2013, § II.M, *available at* http://www.pawd.uscourts.gov/Documents/Judge/fischer_pp.pdf.

[12] On November 15, 2013, the Court ordered that the deadlines contained in the October 15, 2013 Order be stayed pending resolution of the Motion for Reconsideration. (Docket No. 88).

[13] Beyond these arguments, Olin requests that, in the event that its Motion for Reconsideration is denied, the Court appoint a special master to resolve issues related to privilege and what is substantially similar. (Docket No. 80 at 8).

are entitled to the requested discovery under Rule 26 because the litigation records are relevant to proving notice and defect in this products liability case. (Docket No. 84 at 11). Finally, with respect to Olin's good cause argument, Plaintiffs claim that "good cause abounds," largely because, Plaintiffs argue, Olin's counsel repeatedly misrepresented the existence of prior claims and cases involving a Model 94 firing without a trigger pull. (Docket No. 84 at 9–10; Docket No. 89 at 3–4; Docket No. 107 at 17–21).

**F.      The Parties' Joint Reports, the Court's December 18, 2013 Order, and Subsequent Memoranda**

Following argument at the Motion Hearing, the Court ordered the parties to meet and confer in an effort to resolve these remaining discovery disputes, (Docket No. 90), and subsequently ordered the parties to submit a Joint Report on the status of said conferral, (Docket No. 92). The parties filed their Joint Report on December 17, 2013, wherein they averred that having conferred, they could "not agree to a compromise of the discovery dispute as it relates to the production of prior Model 94 claims." (Docket No. 94 at 1, ¶¶ 1–2). Plaintiffs stated that they agreed "to narrow the scope of the requested evidence to prior claims and cases involving the Model 94 involving an unintentional discharge from a jar, bump, or drop, and only while the gun was in the full-down, full-cock, half-cock, or an unknown position," arguing that they are entitled to this discovery under Rule 26(b). (*Id.* at 1–2, ¶ 3).

Olin argued that the Plaintiffs are not entitled to this discovery under Rule 26(b) because the Plaintiffs "failed to timely serve a proper Rule 34 request for the documents they now seek." (*Id.* at 2, ¶ 3). However, Olin proposed a compromise, offering to produce non-privileged documents for cases and claims alleging discharge of Model 94 firearms with the hammer in the half-cock position, including such documents for the cases identified in Mr. Powell's expert

report and the cases included in the Joint Stipulation (Docket No. 50), all subject to Olin's right to object on the grounds that the material was not "substantially similar" and would not be admissible at trial. (Docket No. 94 at 2–3, ¶ 3).

In light of this Joint Report, the Court issued an Order on December 18, 2013, ordering that:

> Olin shall produce, to the extent it has same, non-privileged documents for cases and claims alleging discharge of Model 94 firearms with the hammer in the half-cock position, for the matters set forth in Chuck Powell's expert report on page 22 and the chart of requested cases produced in response to the "agreed workout" of Plaintiff's Motion to Compel (Docket No. [40]), namely the Joint Stipulation (Docket No. [50]). Said documents shall be produced no later than the close of business on January 20, 2014. Olin's position to object and file an appropriate motion that the material produced under this Order is not "substantially similar" to the instant case is preserved.

(Docket No. 93 at 1). The Court otherwise reserved ruling on the pending Motion for Reconsideration. (*Id.* at 2).

The parties filed a second Joint Report on January 31, 2014, pursuant to an Order of Court. (Docket No. 105). Said Report indicates that the parties had complied with the Court's December 18, 2013 Order, in that Olin was scanning 110 to 120 boxes of responsive documents for Plaintiffs' inspection, with the parties sharing the cost of scanning. (*Id.* at 1).

Plaintiffs also filed a Supplemental Memorandum in Law in support of their position with respect to Olin's Motion for Reconsideration on January 21, 2014. (Docket No. 101). In this brief, Plaintiffs raise two additional arguments. First, Plaintiffs state that since their last submission to the Court, they had received a copy of Olin expert Carl Hildebrandt's report, dated December 16, 2013. (*Id.* at 2). Plaintiffs argue that this report undermines Olin's arguments that discovery should be limited to litigation records involving half-cock positions, in that Mr.

Hildebrandt "acknowledges that the half-cock notch is <u>not</u> intended to prevent an unintentional firing of the gun from a drop, butt, or jar" and confirms that the Model 94 has no safety to prevent an unintentional discharge, meaning that the gun can fire from any hammer position. (*Id.* at 2–3). Second, Plaintiffs claim that they have uncovered information indicating that Olin has been compelled in past litigation to produce information relating to all claims of unintentional discharge, contrary to representations made by Mr. Guffey. (*Id.* at 4). Plaintiffs argue that this information is "significant to Olin's argument that it would be onerous for them to produce all prior cases," because the prior court orders Plaintiffs have located "make clear that by December 1992, Olin had twice been ordered to produce documents from prior claims of unintentional discharge." (*Id.*).

Upon receiving this supplemental memorandum, the Court ordered Olin to respond. (CM/ECF, Text Order, Jan. 21, 2014). Olin filed its memorandum on February 2, 2014. (Docket No. 106). Olin contends that Plaintiffs' memorandum should be considered a motion for reconsideration of the Court's December 18, 2013 Order, characterizing said Order as largely disposing of Olin's Motion for Reconsideration.[14] (*Id.* at 1–5). Additionally, Olin asserts

---

[14] The Court believes that Olin's characterization of this Order is incorrect. That Order responded to the parties' Joint Report, dated December 17, 2013, in which Olin agreed to produce certain litigation records involving half-cock cases. (Docket No. 94). In light of Olin's position in that Report, the Court ordered Olin to produce said discovery. (Docket No. 95). However, the Court specifically stated that this Order should not be construed as addressing other issues raised in Olin's Motion for Reconsideration. (*Id.* at 2) ("The Court otherwise reserves ruling on Defendant's Motion for Reconsideration [80]. The remaining issues will be addressed in a forthcoming Memorandum Opinion and Order following receipt and consideration of the transcript of the November 18, 2013 argument, to be filed on the Court's docket, and the testimony of the experts to which reference has been made.").

Olin conjectures that the Court's language that it "otherwise reserves ruling" may have indicated that the Court was reserving ruling on issues related to confidential settlement agreements, extensive in-case attorney communications and work product, and protected health information contained in Olin's files. (Docket No. 106 at 2 n.1). The Court disagrees. *See JTH*

Plaintiffs misconstrue Mr. Hildebrandt's expert opinions, and that Plaintiffs' arguments as to Olin's production in prior cases are misplaced. (*Id.* at 7–9).

## III. LEGAL STANDARD

A Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (citing *N. River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). The standard that a party must meet to prevail on a motion for reconsideration is high. *Berry v. Jacobs IMC, LLC*, 99 F. App'x 405, 410 (3d Cir. 2004) (unpublished). "Motions for reconsideration under Rule 59(e) are granted sparingly '[b]ecause federal courts have a strong interest in finality of judgments.' " *Jacobs v. Bayha*, Civ. A. No. 07–237, 2011 WL 1044638, at *2 (W.D. Pa. Mar.18, 2011) (unpublished) (quoting *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 938, 943 (E.D. Pa. 1995)). "Because of the interest in finality, at least at the district court level . . . the parties are not free to relitigate issues the court has already decided." *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998) (citing *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992)); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) ("Rule 59(e) . . . 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'") (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2810.1, at 127–28 (2d ed. 1995)).

---

*Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 702 (4th Cir. 2004) ([D]istrict courts are entitled to inherent deference when construing their own orders.").

## IV. DISCUSSION

Olin argues that the Court should reconsider its October 15, 2013 Order to correct clear error in the law and to prevent manifest injustice. (Docket No. 107 at 16:10–12). Therefore, the Court will begin its analysis of the pending Motion by reviewing the law that governs discovery.

### A. Law Governing Discovery

Rule 26 describes the scope of discovery as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1).

Discovery rules are construed liberally, underscoring the basic philosophy of the discovery procedure: "prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." Wright & Miller, 8 *Federal Practice and Procedure* § 2001, 18 (3d ed. 2010). The liberalized discovery rules that have developed are intended to serve several purposes, such as: "to avoid surprise and the possible miscarriage of justice,  to disclose fully the nature and scope of the controversy, to narrow, simplify, and frame the issues involved, and to enable a party to obtain the information needed to prepare for trial." *Id.* at 22–23.

Discovery is broad, but it is not boundless. The Third Circuit recognized this maxim stating that "[a]lthough the scope of discovery under the Federal Rules is . . .  broad, this right is

23

not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). This Rule places two content-based limitations upon the scope of discovery: privilege and relevance. A party may "obtain discovery regarding any *nonprivileged* matter that is *relevant* to any party's claim . . . ." FED. R. CIV. P. 26(b)(1) (emphasis added). Additionally, the rules provide that the frequency or extent of discovery otherwise permitted under the rules or by local rule shall be limited by the court if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(2)(C).

"Relevant evidence" means "anything having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." FED. R. EVID. 401. The scope of this language is intended to be broad. *See Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 542 (3d Cir. 2007); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 922 (3d Cir. 1985). Generally, relevant evidence is admissible. FED. R. EVID. 402. Importantly, however, the scope of permissible discovery is broader than the scope of admissible evidence.[15] FED. R. CIV. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears *reasonably calculated to lead to the discovery of admissible evidence*." (emphasis added)).

---

[15] Federal Rule of Evidence 403 is irrelevant to the present analysis. Although district courts must "articulat[e] a balance between the probative value and the prejudicial effect of the evidence as required by [Rule 403] and the jurisprudence of [the United States Court of Appeals for the Third Circuit]" to determine admissibility, *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994) (Alito, J.), the instant question is not one of admissibility, but of production. Parties may obtain discovery pertaining to any relevant information, even if that information is not admissible at trial. *See* FED. R. CIV. P. 26(b)(1).

The scope of fact discovery turns largely on the initial pleadings. *See Toth v. Cal. Univ. of Pa.*, Civ. A. 09-1692, 2011 WL 2436138, at *2 (W.D. Pa. June 15, 2011) (Fischer, J.) ("The complaint and its claims circumscribe the scope of discovery. It is against these claims that discoverability is determined as to each discovery request made."); Committee Note, 192 F.R.D. 340, 192 F.R.D. 340, 389 (2000) ("The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action."). However, throughout discovery, parties remain under an ongoing duty to supplement their responses. Rule 26 provides:

> **(e) Supplementing Disclosures and Responses.**
> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>> (B) as ordered by the court.

FED. R. CIV. P. 26(e)(1).

As suggested by the preceding discussion, trial courts exercise "substantial discretion" over discovery. *Stich v. United States*, 730 F.2d 115, 117–18 (3d Cir. 1984) ("[T]he conduct of discovery is also committed to the sound discretion of the district court."). Issues relating to the scope of discovery permitted under the Rules rest in the sound discretion of the court. *Harris v. Pa. Bd. of Prob. & Parole*, Civ. No. 3:12-cv-0674, 2013 WL 5551206, *2 (M.D. Pa. Oct. 8, 2013) (citing *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987)). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. *Id.* (citing *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir.1983)). In evaluating whether a party is entitled to discovery, the trial court should not simply rule on some

categorical imperative, but should consider all the circumstances of the pending action. *See* 8 *Federal Practice and Procedure*, § 2008, 130–31; Committee Note, 192 F.R.D. 340, 192 F.R.D. 340, 389 (2000).

**B.    Whether Reconsideration of the Court's October 15, 2013 Order is Warranted Due to Procedural Issues**

Olin argues that the Court's October 15, 2013 Order was improper because it granted relief to Plaintiffs on an issue that was not properly before the Court. (Def's Mot. for Recons. at 5, Docket No. 80). Olin initially contends that Plaintiffs never served a Rule 34 Request for Production of the sought-after discovery, which precludes them from moving to compel any such discovery. (*Id.* at 3, 5). To this end, Olin asserts that Plaintiffs have improperly relied on Interrogatory 7 as the source of Olin's obligation to produce the records of past allegations of the Model 94 unintentionally discharging. (Def's Reply at 1, Docket No. 87). Then, Olin argues that Plaintiffs had not properly filed a motion to compel, but merely requested this discovery in their responsive brief. (*Id.* at 5–6). Although Plaintiffs had "asked the Court to broker a deal with Olin," the result was procedurally improper because the Court issued its Order before Olin was able to respond to Plaintiffs' request.[16] (*Id.* at 6). Therefore, because Plaintiffs had neither served a proper Rule 34 request nor filed a motion to compel, Olin moves for reconsideration. (*Id.* at 5; Mot. Hr'g Tr., Nov. 18, 2013 at 4:14–25, Docket No. 107).

Plaintiffs argue in response that the Court's Order was proper. Plaintiffs assert that they appropriately requested discovery of prior litigation and claims during the fact discovery period,

---

[16] The Court notes that pursuant to the Case Management Order issued on April 27, 2012, parties must seek leave of Court to file a Reply brief to a discovery motion. (Docket No. 16 at 3–4, ¶¶ 7, 9). *See also Practices and Procedures of Judge Nora Barry Fischer*, § II.B (Feb. 5, 2013), http://www.pawd.uscourts.gov/Documents/Judge/fischer_pp.pdf. Therefore, Olin should have filed a motion requesting leave to file a reply brief.

pointing to Interrogatory Numbers 7 and 17, which requested information about the existence of alleged defects with the Model 94 and the identification of complaints associated with the Model 94. (Pls' Surreply at 1, Docket No. 89; Ex. A at Docket No. 89-1). Plaintiffs further underscore the emails exchanged between Mr. Jason Schiffman and Mr. Guffey on May 14, 2013, wherein Mr. Schiffman requested additional information and/or <u>documents</u> regarding other incidents involving a Model 94 unintentionally discharging. (Pls' Surreply at 1, Docket No. 89; Ex. B at 2–3, Docket No. 89-2). Additionally, Plaintiffs orally moved to compel discovery responses during the course of the September 26, 2013 TSC. (Pls' Reply at 3, Docket No. 84).

1.  <u>Request for Production</u>

Federal Rule of Civil Procedure 34(a) governs the production of documents in civil matters. Pursuant to Rule 34(a), a party may serve a request for the production of documents that contain relevant information, within Rule 26(b), and that are "in the responding party's possession, custody, or control[.]"

On this point, the Court agrees with Olin that the Plaintiffs' request for documents would have been more properly made through a formal Request for Production under Rule 34. FED. R. CIV. P 34. This, however, does not end the inquiry. Plaintiffs contend that they timely made such a request for production, albeit informally. (Pls' Reply at 3, Docket No. 84). To that end, they cite to *Dixon v. Cappellini* in support of their argument that informal discovery requests may sometimes satisfy Rule 34. *Dixon v. Cappellini*, 88 F.R.D. 1 (M.D. Pa. 1980). In that case, the defendant made an oral request for documents during a deposition. *Id.* at 2. Subsequently, the parties engaged in correspondence relating to the request, before the plaintiff's counsel refused to produce the requested documents, in another letter. *Id.* Once the defendant brought a motion to compel, the plaintiff argued that the motion was improper because no Rule 34 Request had been

served. *Id.* The court disagreed, reasoning that "[t]his letter indicates that the spirit, if not the procedure of Rule 34, was followed. The material requested is described with reasonable particularity, and that both parties were aware which documents were involved. Therefore, we do not find merit in the Plaintiff's argument that the motion to compel must be denied on procedural grounds." *Id. See also Swope v. Nat'l Presto Indus., Inc.*, Civ No. 89-2731, 1990 WL 149203, *2 (E.D. Pa. Oct. 3, 1990) (ruling that a Rule 37(a) motion was appropriate where an oral request for production was made during a deposition, and where "[i]t is clear from the transcript submitted as an exhibit that the parties here knew what document was being requested"); *Employers Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, Civ. No. 2005-0620 2006 WL 1120632, *2 (E.D.N.Y. Apr. 26, 2006). ("This Court finds that the defendant's letter sufficiently described the documents sought [for Rule 34 purposes].").

This Court's research reveals that other federal district courts have ruled that informal requests are insufficient, at least in situations wherein the requesting party later sought to compel the informal Rule 34 request. *See, e.g.*, *Sithon Mar. Co. v. Holiday Mansion*, Civ. No. 96-2262-EEO, 1998 WL 182785, *2 (D. Kan. Apr. 10, 1998) (finding that plaintiff's letter requesting documents, which was filed after the fact discovery period closed, did not satisfy Rule 34); *Suid v. Cigna Corp.*, 203 F.R.D. 227, 228 (D.V.I. 2001) (holding that correspondence between counsel cannot suffice as a Rule 34 request that may be compelled through Rule 37).

The Court notes that the inconsistent case law on the degree of formality required for a Rule 34 Request for Production to be enforced through a Motion to Compel under Rule 37, likely reflects one of the fundamental rules governing discovery: discovery is within the trial court's sound discretion. *Harris v. Pa. Bd. of Prob. & Parole*, Civ. No. 3:cv-12-0674, 2013 WL 5551206, *2 (M.D. Pa. Oct. 8, 2013) (citing *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81,

90 (3d Cir. 1987)). The Court's review of case law involving informal Rule 34 requests also highlights that courts conduct a fact-specific analysis into the course of discovery, the exchanges between counsel, and the judicial interests in both expediting litigation and promoting fair trial. *See Dixon*, 88 F.R.D. at 2; *Swope*, 1990 WL 149203, at *2; *Employers Insurance*, 2006 WL 1120632, at *2; *Sithon*, 1998 WL 182785, at *2; *Suid*, 203 F.R.D. at 228. Additionally, the case law indicates that where parties are both aware of the documents being informally requested, courts are more likely to find that the request satisfies Rule 34. *Id.*

With respect to the instant case, the Court finds that Plaintiffs' informal requests for production—as contained in the May 2013 and September 2013 emails, as well as Plaintiffs' Proposed Order of Court—are sufficient to form the basis of a motion to compel. To this end, the Court initially observes that although Olin had not been served with a formal Request for Production, it was aware that Plaintiffs sought to obtain documents of prior litigation and claims. In his May 14, 2013 email to Mr. Guffey, Mr. Jason Schiffman stated, *inter alia*, "I write to request additional responsive information and/or <u>documents</u>, to the extent that your client is in possession of same, regarding other incidents involving unintentional discharges of a Winchester Model 94." (Docket No. 41-4 at 2) (emphasis added). Of note, Mr. Guffey stated in his reply email, "I am now taking your May 14, 2013 letter <u>as an amendment to your earlier request for production of records dated April 25, 2013</u>." (Docket No. 41-8 at 2) (emphasis added). The significance of these exchanges was debated at the Motion Hearing, at which time Mr. Trunk contended that Mr. Schiffman's letter is properly considered a Request for Production of the records of prior claims and litigation, in light of Mr. Guffey's response accepting the letter as an amendment to the April 25, 2013 Request. (Mot. Hr'g Tr., Nov. 18, 2013, at 17:2–18:16). Mr. Guffey, however, argued that the portion of his May 14, 2013 letter to Mr. Schiffman referring to

29

an amended Request was limited only to the discussion regarding receiver drawings of the Model 94, and Mr. Schiffman's request for "additional responsive information and/or documents" was not included within the amendments to the request. (*Id.* at 24:20–26:1).

From this Court's review of the correspondence, as well as the entire record of discovery, and in light of the case law described above, the Court finds that Mr. Jason Schiffman's May 14, 2013 email satisfies Rule 34's requirements. To this end, the Court initially notes that although Olin makes much of the formality requirements under Rule 34, it does not consistently abide by this same formality standard that it urges the Court to impose on Plaintiffs. From the Court's reading of the May 2013 email exchange, the Court finds it plausible that Mr. Guffey construed only a narrow portion of Mr. Schiffman's letter as an amendment to the prior request for production of documents. (Docket Nos. 41-4; 41-8). However, even accepting Olin's position, the Court notes that Olin openly agreed that part of Mr. Schiffman's letter amended the request for production. (Docket No. 41-8). On this point, the Court agrees with Plaintiffs that Olin is attempting to cherry-pick the legal effect of its correspondence, asserting that some parts of Mr. Schiffman's letter amend a request for production, while other portions cannot. (Mot. Hr'g, Nov. 18, 2013 at 18:15–16, Docket No. 107).

Additionally, the Court is satisfied that as of May 2013, Olin knew that Plaintiffs were requesting documents concerning prior claims and cases, based upon their email correspondence. (Docket Nos. 41-4; 41-8). Mr. Guffey confirmed as much during the November 18, 2013 Motion Hearing. (Docket No. 79 at 6:11–18). Indeed, the production of these documents has been a contested issue throughout the proceedings on this Motion, during the September 26, 2013 status conference, and during the proceedings on Plaintiffs' earlier Motion to Compel. (*See, e.g.*, TSC, Sept. 26, 2013 at 8:4–9, Docket No. 74; Email Correspondence Between Mr. Trunk and Mr.

30

Guffey, Sept. 12, 2013, at 2, Docket No. 84-2; Mot. Hr'g Tr., June 7, 2013, at 40:6–9, Docket No. 52). Clearly, the request for production was adequately communicated, and Plaintiffs have made representations to same in numerous filings subject to Rule 11.[17] (*See, e.g.*, Pls' Resp. to Def's Mot. to Compel Inspections at 15–19, Docket No. 77; Pls' Resp. to Def's Mot. for Recons., Docket No. 84; Pls' Surreply to Def's Mot. for Recons., Docket No. 89). The Court therefore finds that given the facts of this case; this Court's broad discretion in regard to discovery; and the import of Federal Rule of Civil Procedure 1,[18] Plaintiffs have satisfied Rule 34 and made a sufficient request for production.[19] *See also*, Wright & Miller, 8B *Federal Practice and Procedure* § 2166, 13–14 ("Even now, it would seem unduly formal to tell a party who has moved under Rule 33 to compel a response including production that it must begin again under Rule 34 if it is apparent that it is entitled to production under Rule 34.").

### 2.   Motion to Compel

Olin next argues that the Court's October 15, 2013 Order was contrary to law in that Plaintiffs never filed a motion requesting the discovery they were granted, meaning that the issue was not before the Court. (Def's Mot. for Recons. at 5, Docket No.). If a party fails to respond to a Rule 34 request it may be compelled to do so through Rule 37. Rule 37(a)(3)(B)(iv) provides that the aggrieved party may move to compel an answer. FED. R. CIV. P. 37(a)(3)(B)(iv). Federal Rule of Civil Procedure 7(b)(1) requires that such motions be in writing, unless they are made

---

[17] Pursuant to Rule 11, an attorney filing a motion or other paper certifies that, to the best of his or her knowledge, information, and belief, after a reasonable inquiry, the legal and factual contentions contained within the filing are supported. FED. R. CIV. P. 11(b).

[18] Rule 1 provides that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1.

[19] As will be referenced in the Court's accompanying Order, Olin has preserved its right to object to the discovery ordered on grounds including, but not limited to, privilege, confidential settlement agreements, and relevance.

incident to or during a hearing or trial. FED. R. CIV. P. 7(b)(1). If a purported motion does not comply with Rule 7(b)(1), then a court order "based thereon may be invalid because it does not satisfy the writing and particularity requirements, especially when there has not been sufficient notice." 5 *Federal Practice and Procedure* § 1193. By the very terms of Rule 7(b)(1), however, oral motions are permitted when made in the course of a hearing or a trial. Fed. R. Civ. P. 7(b)(1). *See also Casey v. Long Island R.R. Co.*, 406 F.3d 142, 148–49 (2d Cir. 2005) (finding that oral motion for new trial made immediately following pronouncement of verdict satisfied Rule 7, despite the trial court's response requesting that counsel file a written motion on same).

With respect to whether a telephone status conference constitutes a "hearing" under Rule 7(b)(1), the fact that the conference was conducted on the record with a transcript filed is relevant. The Court of Appeals for the Fourth Circuit has applied such a standard to evaluate whether a proceeding is a "hearing" for Rule 7 purposes. *Williams v. Jeep Sales & Serv. Co.*, 161 F.3d 5, 1998 WL 614438 (4th Cir. 1998) (per curiam). In that case, the plaintiff appealed the district court's order dismissing her case, on the basis of asserted procedural defects. *Id.* at *1. The defendants had improperly tried to raise the question of subject matter jurisdiction through a motion to file a motion for summary judgment out of time. *Id.* After the court denied said motion, the defendants raised the question orally during a pretrial conference. *Id.* The court scheduled oral argument on the motion, providing the plaintiff an opportunity to file a written response. *Id.* Additionally, at the hearing, the court asked the defendants to repeat their motion for the record and state the grounds as to same. *Id.* After hearing evidence on the question of subject matter jurisdiction, the court granted the oral motion, dismissing the case. *Id.* On appeal, the Fourth Circuit found no error. *Id.* Based on the plain language of Rule 7(b)(1), the court

summarized the applicable rule: "if a motion to dismiss is made during a hearing or trial—*i.e. on the record*—no written motion is required." *Id.* (emphasis added).

In light of this case law interpreting Rule 7(b)(1), the Court finds that Plaintiffs' statements at the September 26, 2013 TSC, which were made on the record during the course of argument, satisfy Rule 7(b)(1)'s standard for a "motion." Both parties acknowledge that Plaintiffs had informed Olin as to their request prior to the TSC, and this was evidenced by the discussion that occurred on the record, during which Mr. Sneath gave argument as to whether Plaintiffs' request should be granted. (Docket No. 74 at 8:1–10:12). Moreover, Olin cited to Plaintiffs' request for additional discovery as grounds for the Court to grant Olin's request for additional consultants to be permitted to examine the physical evidence, which the Court granted in the same Order upon which Olin moves for reconsideration.[20] (*Id.* at 10:7–12).

This Court accepts Olin's contention that it may have been disadvantaged by the sequence of events. (Def's Mot. for Recons. at 6, Docket No. 80). Consistent with the Case Management Order issued in this case, when a non-dispositive motion is filed, the opposing party may file a response, but a party must seek leave of Court in order to file a reply. (Docket No. 16 at 4, ¶ 9). Consequently, Olin did not have the right to respond to Plaintiffs' request for discovery because it was contained within their brief, rather than being set out in a separate motion. (*Id.*). However, the Court is satisfied that any prejudice Olin may have suffered based on the Court's October 15, 2013 Order has subsequently been mollified. Olin timely filed its Motion for Reconsideration and subsequent Reply Brief, both of which articulate Olin's position with respect to the Plaintiffs' discovery request, and the Court further heard argument on same.

---

[20] This fact is also relevant to the Court's determination that good cause exists to reopen fact discovery. *See infra*, § IV.D.1.

(Docket Nos. 80; 87; 90; 97; 107). The Court has carefully considered Olin's positions. Yet, Olin's arguments with respect to prejudice do not require the Court to reconsider its October 15, 2013 Order.

### C.    Whether the Requested Discovery is Within Rule 26(b)

Next, Olin argues that the Court should reconsider its Order because it granted Plaintiffs discovery beyond the parameters set by Rule 26.[21] (Docket No. 80 at 7–8; Docket No. 87 at 4). Initially, Olin maintains that Plaintiffs' request is overly broad in that it would include irrelevant documents as well as confidential settlement agreements and work-product.[22] (Docket No. 80 at 8). Further, Olin maintains that the discovery request would be unreasonably burdensome, given the high cost associated with going through its litigation records and locating responsive documents. (Docket No. 87 at 5). Plaintiffs argue in response that this discovery is central to proving notice and defect in this case. (Docket No. 84 at 11). With respect to the potential burden Olin will face in producing these documents, Plaintiffs contend that such burden is substantially outweighed by the importance of the discovery. (Docket No. 89 at 5).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. *Bracey v. Harlow*, No. 11-04, 2012 WL 4857790 (W.D. Pa. Oct. 12, 2012) (Kelly, M.J.); *see also Thomas v. Lawler*, No. 10-2437, 2013 WL 949483 (M.D. Pa. Mar.

---

[21] The Court notes that the October 15, 2013 Order specifically excluded privileged documents from the scope of discovery Olin was ordered to produce, and further ordered Olin to provide Plaintiffs a privilege log identifying the date and type of document, author, recipients, and a brief description of the document. (Docket No. 79). The Court therefore need not discuss Rule 26(b)(1)'s limitation on privileged materials in this Memorandum Opinion.

[22] With respect to Olin's arguments as to confidential settlement agreements and work-product contained in the records of prior litigation and claims, the Court notes that Olin reserves the right to raise these objections. Therefore, the Court will not address these arguments in this Memorandum Opinion. Rather, Olin may move for a protective order if and when such issues arise. FED. R. CIV. P. 26(c).

11, 2013). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Bracey*, 2012 WL 4857790, at *2. Additionally, discovery may be denied where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information sought by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

1.     Relevance

Plaintiffs argue that the discovery falls squarely within the scope of Rule 26 in that the prior litigation and claims requested would afford Plaintiffs "the opportunity to explore relevant and highly probative information." (Pls' Surreply at 3, Docket No. 89). To that end, Plaintiffs contend that the discovery is relevant to prove both notice and defect, citing *Blumer v. Ford Motor Co.*, 20 A.3d 1222 (Pa. Super. 2011). (Pls' Resp. at 11, Docket No. 84). Olin, however, contends that prior cases and claims involving an unintentional discharge of a Model 94, in which the hammer was full-down or in the full-cocked position, are not discoverable. (Def's Opp'n at 6, Docket No. 106). Such request for information, Olin asserts, is "uniquely calculated to lead to the discovery of *inadmissible* evidence." (*Id.*). Rather, Olin urges that discovery should

be confined based on the facts of the instant case, so that prior claims or cases would include only situations "that have a damaged sear or sear pan or some internal damage and the gun discharges," "where the hammer was in the half-cocked position." (Mot. Hr'g Tr. at 14:23–15:12, Docket No. 107).

To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings. *See* FED. R. CIV. P. 26(b) (defining discoverable information to include "any nonprivileged matter that is relevant to any party's *claim or defense*") (emphasis added); *Toth v. Cal. Univ. of Pa.*, Civ. A. 09-1692, 2011 WL 2436138, at *2 (W.D. Pa. June 15, 2011) (Fischer, J.). At Count One, the Complaint charges that the Model 94 was defective due to the potential for the gun to discharge without a trigger pull:

> 14. The firearm was defective in that it could and did malfunction and accidentally and/or unintentionally discharge without its trigger being depressed, in that it had an ineffective and/or defective safety device and/or that it was improperly designed and lacking all things necessary to make it safe and prevent an accidental and/or unintentional discharge.
>
> 15. The firearm was further defective in that it failed to be properly labeled and have proper warnings.

(Compl. At 6, ¶¶ 14–15, Docket No. 1-2). With respect to product defect claims, the Restatement (Third) of Torts[23] provides that a product:

> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption

---

[23] The Court notes that the Pennsylvania Supreme Court has not yet adopted the Third Restatement of Torts. *See, e.g.*, *Schmidt v. Boardman Co.*, 11 A.3d 924, 940–41 (Pa. 2011). The Third Circuit Court of Appeals, however, has predicted that the Pennsylvania Supreme Court will adopt the Third Restatement. *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 53–54 (3d. Cir. 2009), *cert. denied*, 558 U.S. 1011 (2009). Therefore, absent a contrary ruling from the Pennsylvania Supreme Court, federal district courts are to admit evidence and apply sections 1 and 2 of the Third Restatement of Torts in products liability cases. *Covell v. Bell Sports, Inc.*, 651 F.3d 357, 360 (3d Cir. 2011).

of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

RESTATEMENT (THIRD) OF TORTS, § 2 (1998). To establish a *prima facie* case of design defect under the Restatement (Third) of Torts, a plaintiff must prove the availability of a technologically feasible and practical alternative design that would have reduced or prevented the harm sustained by the plaintiff. *Id.* § 2, cmt. f. Of course, the plaintiff must establish that the design defect caused the plaintiff's harm. RESTATEMENT (THIRD) OF TORTS § 1.

At Count Two, the Complaint sounds in negligence:

19. The Defendant was negligent in the following particulars:

a. In designing and/or manufacturing and/or assembling and/or selling a firearm with inadequate and/or defective safety devices and measures;

b. In designing and/or manufacturing and/or assembling and/or selling a firearm with a design which would permit it to accidentally discharge without the trigger being depressed; and

c. In failing to warn of the dangers.

(*Id.* at 8, ¶ 19). To establish liability for negligence, a plaintiff must prove "four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Cox v. Wal–Mart Stores E., L.P.,*

350 F. App'x 741, 743 (3d Cir. 2009) (quoting *Swift v. Ne. Hosp. of Phila.*, 456 Pa. Super. 330, 690 A.2d 719, 722 (Pa. 1997)).

Whether Olin was on notice of the alleged design defect is therefore central to the questions of foreseeability at Count One, and breach of duty at Count Two. *See Lynn ex rel. Lynn v. Yamaha Golf-Car Co.*, 894 F. Supp. 2d 606, 627–28 (W.D. Pa. 2012) (Hornak, J.). As such, Plaintiffs are entitled to discover information probative of foreseeability, including evidence indicating whether Olin was on notice that the Model 94's design allowed it to fire without a trigger pull. Evidence of prior accidental discharge incidents is also discoverable because it goes to Plaintiffs' theory of causation. *See Sweitzer v. Oxmaster, Inc.*, Civ. No. 09-5606, 2011 WL 721907, *2 (E.D. Pa. Mar. 2, 2011) (citing *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 97 (3d Cir.1983); *Barker v. Deere and Co.*, 60 F.3d 158, 162 (3d Cir.1995)). Additionally, because the Complaint sounds in negligence, broader discovery is appropriate to allow Plaintiffs to prove different theories of liability. *See, e.g.*, 6-26 *Moore's Federal Practice*, § 26.46(11)(a) (2013).

Relatedly, the Court finds no reason to limit Plaintiffs' discovery to claims and cases involving unintentional discharge when a Model 94 was in the half-cock position. Plaintiffs have made clear that they believe the Model 94 was defective because it lacked a mechanical barrier to prevent firing without a trigger pull when the gun is dropped, bumped, or jarred, regardless of the hammer position. (*See* Mot. Hr'g Tr., June 7, 2013, at 34:14–19, Docket No. 52; Mot. Hr'g Tr., Nov. 18, 2013 at 20:9–16, Docket No. 107). In this Court's estimation, Olin has attempted to limit Plaintiffs' discovery based upon its own definition of what circumstances are substantially similar. "However, a party should not be limited by its opponent's theory of the case in determining what is discoverable." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1192 (10th Cir. 2009). The Court recognizes that Olin's objections are preserved, but the Court will not

reconsider its October 15, 2013 Order based on Olin's argument that Plaintiffs are not entitled to the discovery they seek.

Olin's arguments against relevance focus on defining "substantially similar" evidence, going to the admissibility of these records at trial. *Scaturro v. Warren & Sweat Mfg. Co., Inc.*, 160 F.R.D. 44, 46 (M.D. Pa. 1995). This argument is misplaced. Rule 26(b) makes clear that discoverability and admissibility are distinct concepts, and a party may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense. FED. R. CIV. P. 26(b). Information may be discoverable even if it will be inadmissible, as that information might lead to other evidence that will be admissible. *See id.*; 8 *Federal Practice and Procedure*, § 2008, 145 & n.47 (collecting cases). Additionally, Plaintiffs point to *Blumer v. Ford Motor Co.* to dispute how "substantially similar" should be defined here. 20 A.3d 1222, 1229–30 (Pa. Super. Ct. 2011) (determining that evidence of prior accidents is admissible if the trial court determines that the circumstances of those incidents were substantially similar to the circumstances of the instant case). Regardless, that is a question to be determined in relation to admissibility, not discoverability, and so the Court need not address it at this time. Therefore, the Court finds that Plaintiffs are entitled to discovery of prior cases and claims regarding a Model 94 unintentionally discharging, regardless of the position of the hammer.

### 2. Potential Limitations on Discovery

Next, Olin argues that Plaintiffs' discovery request—even if relevant—falls outside of Rule 26's scope because it would excessively burden Olin. (Docket No. 80 at 8). Rule 26(b)(2)(C)(iii) calls on trial courts to weigh the burdens and expenses associated with the proposed discovery against the likely benefits of same. FED. R. CIV. P. 26(b)(2)(C)(iii). In making this assessment, the court should consider the needs of the case, the amount in

controversy, the parties' resources, the importance of the issues at the present stage in the action, and the importance of the discovery in resolving the issues.

With respect to Plaintiffs' potential benefits of obtaining this discovery, as the Court noted above, the discovery at issue is highly relevant to Plaintiffs' claims.[24] Plaintiffs' counsel has put significant effort into trying to obtain information of prior cases and claims involving the Model 94 other than through discovery, but has repeatedly encountered roadblocks. (*See* Mot. Hr'g Tr., Nov. 18, 2013, at 21–22, Docket No. 107). Repeatedly, Plaintiffs have found out that in prior cases involving similar circumstances, Olin has preemptively blocked access to litigation records by consistently conditioning settlement in those prior cases on a requirement that plaintiffs' counsel destroy all documents and/or never produce documents to third parties, in addition to signing confidentiality agreements. (*Id.*). As a result, Plaintiffs are unable to obtain information on prior cases and claims through means other than discovery, which weighs in favor of compelling this discovery request. *Bayer Corp. & Subsidiaries v. United States*, 850 F. Supp. 2d 522, 540 (W.D. Pa. 2012).

Additionally, as this Court has noted, this is a significant personal injury case given the extensive medical treatment Plaintiffs have undergone. Further, both Wayne Trask and A.T. have been permanently disfigured as a result of the accident. (Mot. Hr'g Tr., Nov. 18, 2013, at 32–33, Docket No. 107). The demand and/or verdict could feasibly amount to several million dollars. (*Id.* at 33:5–6).[25] In sum, the Court finds that Plaintiffs have a very strong interest in obtaining this discovery. *U.S. ex rel. McBride v. Halliburton Co.*, 272 F.R.D. 235, 241 (D.D.C. 2011) ("I can presume, given the numbers of hours for which the defendants billed and the period of time

---

[24] *See supra*, § IV.C.1.
[25] Moreover, Plaintiffs have averred that their demand will also require "some remedial action by Olin with regard to this gun because it's a public safety hazard." (*Id.* at 47:10–13).

at issue, that the amount in controversy is great and that the defendants' resources are greater than the relator's.").

Regarding Olin's burden, Olin has provided affidavits and argument with regard to the cost it will incur in producing the requested discovery. Mr. Guffey explained that because Olin has been out of the business of making the Model 94 since 1981, Olin's current counsel have "cobbled together" records of prior cases and claims from various sources. (Mot. Hr'g Tr., Nov. 18, 2013 at 15:13–20, Docket No. 107). Consequently, the records contain attorney work-product and privileged communications, and require counsel to go through each box "painstakingly." (*Id.* at 15:20–16:6). In its initial Motion for Reconsideration, Olin attached a declaration of paralegal Jennifer N. Daake, in which Ms. Daake averred that she was aware of over one hundred bankers' boxes containing hard copy documents relating to prior Model 94 cases and/or claims, some of which were located at off-site facilities. (Decl. of Jennifer N. Daake at 2, ¶ 4, Docket No. 80-1). In its Reply brief, Olin represented that it had now identified approximately 270 boxes of documents relating to prior cases and claims that were potentially responsive to the Court's October 15, 2013 Order. (Docket No. 87 at 4). To date, counsel for Olin had spent approximately 260 hours reviewing 25 of these boxes, at a cost of $44,000. (*Id.* at 5). In Olin's most recent briefing, counsel averred that in the course of complying with the Court's December 18, 2013 Order, "a team of Olin's counsel has spent approximately nine hundred and fifty collective hours reviewing potentially responsive boxes, at a cost to Olin of approximately two hundred thousand dollars." (Docket No. 106 at 5). Olin further stated that if the October 15, 2013 Order is not reconsidered, further searching of the boxes will be required. (*Id.* at 5–6). Given the expense of complying with the October 15, 2013 Order, Olin argues that the Court should consider "the injustice to Olin in that the proper way this should have been

41

done would have been back when the original request for production should have been provided." (Mot. Hr'g Tr., Nov. 18, 2013, at 34:12–16, Docket No. 107).

Although the Court recognizes that producing this discovery comes at a considerable cost to Olin, the Court finds that consideration of all relevant factors indicate that Plaintiffs should be granted this discovery. This discovery is highly probative to Plaintiffs' case, and they have no other feasible method to obtain this information. *See Bayer Corp.*, 850 F. Supp. 2d at 540. As Plaintiffs point out, Olin is a multi-billion dollar company, and holds a $25 million insurance policy that may cover this case. (Mot. Hr'g Tr., Nov. 18, 2013 at 23, Docket No. 107). *See In re Actos (Pioglitazone-Products Liab. Litig.)*, 6:11-MD-2299, 2013 WL 4776346, *4 (W.D. La. Sept. 3, 2013) ("The financial and personnel resources available to the Defendants appear to be sufficient to allow them to respond to the PSC's requests for production."). Moreover, given that Olin has already invested significant time going through the boxes to determine their contents, (Docket No. 106 at 5–6), the cost associated with complying with the October 15, 2013 Order in its entirety should be reduced significantly in that Olin is presumably now familiar with the boxes' contents and better positioned to secure responsive documents. Furthermore, the substantial expense Olin is incurring pursuant to the October 15, 2013 Order is caused largely because of the significant time needed to go through its files to determine what information was contained therein. (Def's Reply at 4, Docket No. 87). The expense of production is thus due—at least in part—to the state of Olin's record keeping, rather than to the particulars of this case, of which the Court is mindful in analyzing whether the discovery would cause an undue burden. *See Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 61 (D. Mass. 2005) ("[I]t is [defendant's] own record keeping policies which have contributed significantly to the burden imposed on it. Courts have been loath to reward (and possibly encourage) poor record keeping

42

by shielding companies with inefficient recording methods from discovery."). Plaintiffs face a much more difficult burden if Olin's records are not produced, given the relevance of the information and the fact that Plaintiffs have not been able to obtain it elsewhere, despite diligent efforts. *Roth v. Sunrise Senior Living Mgmt., Inc.*, 2:11-CV-4567, 2012 WL 748401, at *3 (E.D. Pa. Mar. 8, 2012) ("Weighed against the likely value of the information contained in the medical records, we do not consider this an undue burden."). On balance, then, Olin's burden is not undue, and does not warrant reconsideration. *Id.*

### D. Whether Plaintiffs Demonstrated Good Cause to Reopen Fact Discovery

Finally, Olin argues that reconsideration is warranted because Plaintiffs have failed to demonstrate the good cause required to reopen fact discovery. (Def's Reply at 2–3, Docket No. 87). Olin contends that Plaintiffs' dilatory request was caused by carelessness, attorney error, or a tactical decision—none of which suffices to establish good cause under Rule 16. (*Id.* (citing *Kraus Insured., Inc. v. Moore*, 2008 WL 4206059, at *6 (W.D. Pa. Feb. 11, 2008) (Fischer, J.); *Carnegie Mellon Univ. v. Marvell Tech. Grp. Ltd., et al*, 2013 WL 772698, at *3 (W.D. Pa. Feb. 28, 2013) (Fischer, J.); and *Graham v. Progressive Direct Ins. Co*., 271 F.R.D. 112, 121 (W.D. Pa. 2010) (Fischer, J.))). Plaintiffs vigorously assert good cause existed because their failure to bring this discovery request during the fact discovery period was not the result of tactical decisions and/or carelessness; rather, their dilatory request was caused by reliance on misrepresentations by Olin's counsel. (Mot. Hr'g Tr., Nov. 18, 2013, at 22:7–14, Docket No. 107).

Rule 16 of the Federal Rules of Civil Procedure authorizes a Court to enter pretrial scheduling orders setting deadlines for the completion of discovery, the amendment of pleadings, and the joinder of parties. *Karlo v. Pittsburgh Glass Works, LLC*, CIV.A. 10-1283, 2011 WL

5170445 (W.D. Pa. Oct. 31, 2011). Pursuant to Rule 16(b)(4), a district court may modify a scheduling order upon a showing of "good cause." FED. R. CIV. P. 16(b)(4). This authority extends to requests to reopen discovery. *In re Chocolate Confectionary Antitrust Litig.*, MDL 1935, 2013 WL 3873225 (M.D. Pa. July 25, 2013). The decision whether to reopen discovery is committed to the sound discretion of the district court, *LeBoom v. Lancaster Jewish Cmty. Ass'n*, 503 F.3d 217, 235 (3d Cir. 2007), and the court's discretion is broad. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995). This Chamber's Rules reinforce the Court's discretion with respect to discovery, including the time period for discovery. *See* Practices and Procedures of Judge Nora Barry Fischer, Feb. 5, 2013, III.B.1., http://www.pawd.uscourts.gov/Documents/Judge/fischer_pp.pdf ("Extensions of time for discovery are permitted for cause shown, provided that the case has been advanced by counsel during the initial period of discovery.").

For purposes of Rule 16(b)(4), the existence of "good cause" turns on a variety of factors, including: (1) whether the moving party's lack of diligence or the opposing party's conduct contributed to the delay; (2) potential prejudice caused by the discovery extension; and (3) any other factors the trial court, in its discretion, determines to be relevant. *See* 6A *Federal Practice and Procedure*, § 15222.2, 313–16. The Court now turns to these factors to assess whether Plaintiffs have met their burden to establish good cause.

### 1.    Causes of the Plaintiffs' Delay in Seeking Discovery

Initially, the Court considers the facts and circumstances that caused Plaintiffs' allegedly untimely request for discovery. Olin argues that Plaintiffs cannot establish the requisite good cause because the reason Plaintiffs failed to timely seek to compel discovery of the prior claims and litigation at issue amounts to attorney error, carelessness, and/or tactical decisions. (Def's

Mot. for Recons. at 7, Docket No. 80). Olin notes that Plaintiffs' counsel did not raise this discovery issue during numerous Telephone Status Conferences held with the Court. (*Id.* at 3). Additionally, Olin points to the parties' stipulation following Plaintiffs' Motion to Compel, asserting that Plaintiffs now seek to renege on this agreement. (Def's Reply at 1, Docket No. 87).

Plaintiffs assert that good cause exists to reopen discovery in that they were prejudiced by Olin's repeated misrepresentations during fact discovery. (Docket No. 84 at 9). Plaintiffs contend that counsel for Olin told Plaintiffs' counsel on multiple occasions that Olin was unaware of any similar cases of unintentional discharge. (*Id.* at 10). Through their independent research, however, Plaintiffs' counsel learned of other cases. (*Id.*). As of November 2013, Plaintiffs had "identified now somewhere over 80 cases where there was [a] claim, at least a claim made that the gun unintentionally discharged when it was dropped." (Mot. Hr'g Tr., Nov. 18, 2013 at 21:12–15, Docket No. 107).

With respect to diligence, to establish good cause, the party seeking an extension should show that more diligent pursuit was impossible. *Pritchard v. Dow Agro Sciences*, 255 F.R.D. 164, 175 (W.D. Pa. 2009) (Fischer, J.) (citing *Hewlett v. Davis*, 844 F.2d 109, 113 (3d Cir. 1988) ("The Court of Appeals will not interfere with the discretion of the district court by overturning a discovery order absent a demonstration that the court's actions made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible.")). Retaining new counsel, by itself, does not establish good cause. *See Buchanon Cnty., Va. v. Blankenship*, 545 F. Supp. 2d 553, 555 n.2 (W.D. Va. 2008). A litigant "voluntarily . . . [chooses his] attorney as his representative in [an] action . . . and he cannot . . . avoid the consequences of the acts or omissions of this freely selected agent." *Marlowe Patent Holdings LLC v. Dice Electronics, LLC*, 293 F.R.D. 688, 700 (D.N.J. 2013) (quoting *Link v.*

45

*Wabash R. Co.*, 370 U.S. 626, 633–34 (1962)). Indeed, "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Id.* (quoting *Link*, 370 U.S. at 634).

Here, the Court finds that Plaintiffs' delay was not simply the result of carelessness or error—rather, it was caused in large part by the representations made by Olin's counsel regarding prior cases and claims. To that end, the Court finds Olin's responses to Plaintiffs' Interrogatories telling. Interrogatory Number 7 asked Olin to identify prior allegations of defect involving the Model 94, and contained no time limitation. (Pls' Interrog. at 6–7, ¶ 7, Docket No. 41). Interrogatory Number 17, relatedly, requested information on any complaints alleging accidental discharge of a Model 94 made during the past ten years. (*Id.* at 10–11, ¶ 17). In its initial response to Interrogatory Number 7, Olin provided a blanket denial of any such prior claims, and identified only the *Keene* case for Interrogatory Number 17. (Def's Resp. at ¶¶ 7, 17, Docket No. 41-3). Additionally, Olin responded to Interrogatory Number 18, which requested information as to how the company records complaints, by saying that during the past ten years, Olin had not recorded any complaints about the Model 94 other than complaints made pursuant to a lawsuit, as identified in Interrogatory Number 17. (*Id.* at 15–16, ¶ 18). Taken together, then, Olin's representations indicated that the *Keene* case was the only other prior claim of a Model 94 accidentally firing.

In fact, the day before Olin verified this Response, it had settled another case that involved an allegedly similar claim, in *Cameron v. Olin.* (Mot. Hr'g Tr. at 11:5–8, Docket No. 52). Additionally, following the email communications with Messrs. Schiffman in May 2013, in which Plaintiffs' counsel informed Mr. Guffey that they had become aware of multiple prior

cases that had not been identified, Olin then supplemented its Responses to Plaintiffs' Interrogatory Number 17 to include those cases—which Plaintiffs had already independently identified. (*See* Powell Report at 5, Docket No 42; Pls' Mot. to Compel at 5, ¶¶ 16–17, Docket No. 40; Def's Supp. Resp. to Pls' Interrog. at 3–4, Docket No. 87-6).

Through the course of proceedings on numerous motions that have been conducted since May 2013, Olin has explained that in answering Plaintiffs' Interrogatories, it confined its responses to Interrogatories 7 and 17 to only prior cases and claims that it[26] deemed to be substantially similar. (*See,e.g.*, Mot. Hr'g Tr., June 7, 2013, at 44–45, Docket No. 52). Thus, according to Olin's definition of "substantially similar," cases like *Cameron* were beyond what Plaintiffs requested. (Guffey Decl. at 3, ¶ 10, Docket No. 87). Mr. Guffey averred in his Declaration that:

> During discussions between myself and counsel for Plaintiffs regarding the information and documents Plaintiffs have requested during discovery, I have directed my representations to Plaintiffs' factual allegation in this case that they sustained injuries while the incident Model 94 was in the half-cock position.

(*Id.*). Olin's approach of limiting its discovery production to only that information that it deemed substantially similar misled Plaintiffs' counsel. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1192 (10th Cir. 2009) ("However, a party should not be limited by its opponent's theory of the case in determining what is discoverable.").

With respect to the parties' stipulation resolving Plaintiffs' Motion to Compel, the Court does not find itself constrained to enforce that agreement. First, the Court accepts Mr. Trunk's

---

[26] The court—not the parties—define "substantially similar." *See Crump v. Versa Products, Inc.*, 400 F.3d 1104, 1110 (8th Cir. 2005). *See also Cressman v. Pa. Tpk. Comm'n*, 401 C.D. 2012, 2012 WL 8670348 (Pa. Commw. Ct. Aug. 17, 2012); *Mendenhall v. Pa. Dept. of Transp.*, 537 A.2d 951 (Pa. Commw. Ct. 1988).

proffers that Plaintiffs would not have agreed to that stipulation had Olin's counsel more candidly disclosed the extent of prior cases and claims. (Mot. Hr'g Tr., November 18, 2013, at 22:7–14, Docket No. 107). Second, the Court also accepts the proffers by Mr. Trunk that despite diligence by Plaintiffs' counsel to obtain information from the initial ten disclosed cases outside of formal discovery, those efforts have been wholly ineffective due to the confidential settlements and agreements to destroy case files that Olin demanded in each of those cases. (*Id.* at 21:12–22:7). The Court further finds that Plaintiffs' efforts to track down these cases—which involved obtaining paper case files from storage facilities—contributed to Plaintiffs' delay in seeking Court intervention. (Daniel Schiffman Decl. at 3, Docket No. 84-7).

Finally, the Court notes that Olin was under a duty to supplement its Responses to Plaintiffs' Interrogatories before the parties agreed to the stipulation. FED. R. CIV. P. 26(e). The plain language of Rule 26(e) states that the duty to supplement is triggered once a party becomes aware that its previous response to an interrogatory is incomplete or incorrect. *Id.* Given discussions with Plaintiffs' counsel in May and June 2013, and based on Mr. Powell's expert report,[27] Olin became aware that Plaintiffs' theory of liability was not confined to half-cock cases. (*See, e.g.*, Docket No. 52 at 34). At this point, Olin was obligated to supplement its Responses to Interrogatories 7 and 17 under Rule 26(e).

Based on the above analysis, the Court finds that this case is distinguishable from the cases to which Olin cites as supporting its contention that Plaintiffs cannot show good cause. (Def's Reply at 2, Docket No. 87). Unlike in *Carnegie Mellon*, Plaintiffs here presented ample showing that diligent discovery was hampered by both misleading statements from Olin's counsel and the practical difficulties obtaining the information outside of discovery. *See*

---

[27] *See supra* § II.B.2–C.

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, CIV.A. 09-290, 2013 WL 772698, at *3 (W.D. Pa. Feb. 28, 2013). The Court also finds that *Graham* is distinguishable. In *Graham*, the plaintiffs asserted they had recently unearthed information, prompting their motion to amend the complaint. *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 119 (W.D. Pa. 2010). By contrast, in this case, the Court finds merit in Plaintiffs' averments that independent research has uncovered information about prior cases and claims that Olin did not reveal. As this Court noted during the November 18, 2013 Motion Hearing, "I'm still troubled because what I see is shifting sands here about what Olin knows and doesn't know and what these lawsuits are or aren't and what the claims are or aren't. (Docket No. 35:23–36:1).

2.    Potential Prejudice of Reopening Fact Discovery

Next, the Court finds minimal potential prejudice that may arise from reopening fact discovery. Importantly, this case has not been set for trial. (Docket, CA 2:12-cv-340). *See Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 365 (D. Del. 2006) (finding good cause to modify a scheduling order where the court found that the amendment would not unduly delay proceedings). Moreover, the Court notes it became involved in the present discovery dispute when Mr. Sneath contacted the Court, requesting intervention to compel further inspections. (*See* TSC, Sept. 26, 2013, Docket No. 74). In the course of that hearing, Mr. Sneath averred that Olin was requesting additional inspections <u>because of</u> Plaintiffs' requests for documents of prior cases and claims involving unintentional discharge, regardless of the hammer position.[28] (*Id.* at 9:5–7). Given that the Court granted Olin's request for inspections, the Court

---

[28] During this discussion, Mr. Sneath further intimated that Plaintiffs' theory of the case had changed:

> This case started out with Paragraph 8 of the Complaint saying that
> the gun fell from the tree stand and that the hammer of the gun fell

49

finds further reason that good cause exists to reopen discovery. *See Inline Connection Corp.*, 237 F.R.D. at 365 (determining that prior amendments to the court's scheduling order tended to establish good cause).

---

> from the tree stand and that the hammer of the gun struck a hard object, causing a discharge of the gun.
>
> What we now know based on recent questioning by Mr. Trunk, who had entered into the case here relatively late in the game, is that he—his theory no longer appears to be limited to that kind of an accident.

(Docket No. 74 at 9:8–16). Mr. Guffey echoed this notion of changing theories at the November 18, 2013 Motion Hearing. (Docket No. 107 at 9:13–23).

The Court has thoroughly reviewed the record in this case, *see supra*, § II, and finds absolutely no merit to Olin's contentions that Plaintiffs' theory has shifted since Kline & Specter entered their appearance. On this point, one need only compare the following statements made by Mr. Jason Schiffman at the June 7, 2013 Motion Hearing with that made by Mr. Trunk at the November 18, 2013 Motion Hearing. On June 7th, Mr. Schiffman explained Plaintiffs' theory of defect as follows:

> There is no mechanical barrier between the hammer on this firearm and the firing mechanism. So, in other words, there is nothing to prevent the hammer on this firearm from coming into contact with the firing mechanism, whether it's in the uncocked position, the half-cock position, or the full cock position.

(Docket No. 52 at 34). On November 18th, Mr. Trunk summarized the defect:

> The Plaintiffs are saying in this case that this gun is defective because it lacks a mechanical barrier between the hammer and the firing pin. And if the gun was properly constructed and designed, it would have a mechanical barrier such that it wouldn't matter what position the hammer was in when the gun is inadvertently dropped because it would prevent the gun from firing, regardless of whether it's in the full-down, half-cocked, or full-back position.

(Docket No. 107 at 20:9–16). Based on these nearly identical statements of Plaintiffs' theory, the Court rejects Olin's arguments that Plaintiffs are seeking a new round of discovery based on a change in their theory of liability.

Based on the foregoing analysis, the Court finds that Plaintiffs have met their burden of showing good cause for the Court to reopen fact discovery for the purpose of discovering information of past allegations that the Model 94 fired without a trigger pull.

## V. CONDUCT OF OLIN'S COUNSEL

This Court expects counsel to approach the discovery process with professionalism and respect for the judicial system. Previous versions of the federal discovery rules were premised on the idea that "a judicial proceeding was a battle of wits rather than a search for the truth," meaning that each side was protected in keeping his cards close to his chest, to avoid giving up his hand. 8 *Federal Practice and Procedure* § 2001, 16. Under the current rules, however, litigation is "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Aetna Inc. v. Express Scripts, Inc.*, 261 F.R.D. 72, 78 (E.D. Pa. 2009) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682–83 (1958)). In this way, the current Rules seek to streamline the litigation process in order to "secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1; *see also Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465 (2000). This expectation that attorneys approach litigation with candor is further reflected in the Pennsylvania Rules of Professional Conduct. *See* PA. ST. RPC Rule 3.3 (requiring attorneys to "avoid conduct that undermines the integrity of the adjudicative process").

During the repeated discovery disputes that have arisen so far in this litigation, this Court is troubled by indications that counsel for Olin may have failed to provide the candor expected from officers of the Court. Plaintiffs' counsel has offered numerous examples of misrepresentations and untrue statements made by Olin's counsel, which prejudiced Plaintiffs' ability to discover basic information about their case. The Court need not adjudicate the accuracy

of Plaintiffs' claims at this point, but the Court notes the seriousness of these alleged misrepresentations, which are potentially grounds for sanction. *See* FED. R. CIV. P. 37; 8B *Federal Practice and Procedure*, § 2284 ("If the failure to make discovery was willful, a court today may well order dismissal or a default judgment even though less drastic sanctions are available."). Going forward, the Court expects that all counsel will act with the highest degrees of professionalism and candor to the Court and to each other.

## VI.     CONCLUSION

For the reasons laid out above, Defendant's Motion for Reconsideration is DENIED. However, in light of Plaintiffs' consent to narrow the scope of discovery, as expressed in the Joint Report filed December 17, 2013 (Docket No. 94), the Court orders that the October 15, 2013 Order is modified to the extent that Olin shall produce "prior claims and cases involving the Model 94 involving an unintentional discharge from a jar, bump, or drop, and only while the gun was in the full-down, full-cock, half-cock, or an unknown position." Finally, the Court notes that Olin's rights to object to admissibility and/or file motions regarding the potential use of said discovery responses at trial are preserved.

An appropriate order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   March 4, 2014
cc/ecf:  All counsel of record