**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WAYNE TRASK, BETH TRASK, *and* A.T., *a minor, by and through her parents and natural guardians* WAYNE TRASK and BETH TRASK, <br><br> Plaintiffs, <br><br> v. <br><br> OLIN CORPORATION, *individually and trading and doing business as* WINCHESTER, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 12-340 <br> Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

I.     INTRODUCTION

This is a products liability case involving an allegedly defective Winchester Model 94 firearm ("Model 94"). Plaintiffs Wayne Trask ("Trask"), Beth Trask, and A.T.[1] (a minor), (collectively "Plaintiffs") filed this suit against Defendant Olin Corporation ("Olin" or "Defendant") in the Court of Common Pleas of Indiana County, Pennsylvania on November 21, 2011.  (Docket No. 1-2).  Plaintiffs reside in Freeport, Pennsylvania.  (Docket No. 1-2 at ¶¶ 1–3). Defendant, which does business as Winchester, is a Virginia Corporation with its principal place of business in Clayton, Missouri. (Docket No. 1-2 ¶ 4).  As the parties are completely diverse and the matter in controversy exceeds $75,000.00, the action was removed to this Court by Defendant on March 20, 2012.  (Docket No. 1 at ¶¶ 2-4).

---

[1] This Court's local rules require that "[i]f the involvement of a minor child must be mentioned, only that child's initials shall be used."  District Court, Western District of Pennsylvania, Local Rules of Court, LCvR 5.2(D)(2) (eff. Feb. 1, 2013).  At the initial Case Management Conference held on April 26, 2012, the Court advised counsel of same.  (Docket No. 15).

Presently before the Court is Plaintiffs' Motion for Leave to Amend. (Docket No. 166). Plaintiffs seek to amend their Complaint to add a request for punitive damages, (Docket No. 166 at 1), and to specifically aver that "[d]espite awareness of the firearm's defective and unreasonably [sic] condition, Defendant manufactured, assembled, and sold the subject firearm," that "[d]espite awareness of the firearm's defect that causes it to fire when dropped, bumped, or jarred, and of numerous deaths and injuries due to the defect, Defendant did not publish a warning directed to existing users of the firearm," and that "[t]he aforementioned conduct of Defendant was outrageous and done with reckless indifference to the well-being of users of the firearm and bystanders, including Plaintiffs." (Docket No. 166-1 at ¶¶ 16, 17, 20). Because of newly discovered facts brought forth during an extensive discovery period, which are discussed below, Plaintiffs' Motion is essentially a Motion for Leave to Amend the Complaint to Conform to the Evidence. As Plaintiffs have not previously amended, this would be the First Amended Complaint. The Court has thoroughly considered the parties' multiple filings on this issue, (Docket Nos. 166, 167, 182, 183, 190, 195, 206, 207, 209, 220, 224, & 227), the last of which was filed on January 27, 2016, as well as oral argument and hearing on the matter held on November 2, 2015. (Docket Nos. 211 & 219). For the reasons set forth below, Plaintiffs' Motion will be GRANTED.

II.    FACTUAL BACKGROUND[2]

According to the Complaint,[3] on or about November 30, 2009, at 9:00 a.m., Wayne Trask and A.T. were on a hunting trip in Coral, Indiana County, Pennsylvania. (Docket No. 1-2, at

---

[2] As the parties are well familiar with the facts of this case, the Court limits its discussion of the factual background. For a more robust discussion of same, refer to the Court's earlier decision resolving discovery related motions. (*See* Docket No. 110). Also see the Court's Memorandum Opinion on Defendant's *Daubert* Motions, (Docket No. 234).

[3] The Court reads the Complaint in the light most favorable to Plaintiffs. "Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from

¶ 5).  They carried a Model 94, (Docket No. 1-2 at ¶ 7), climbed a tree stand, and sat down. (Docket No. 1-2 at ¶ 6).  Thereafter, the firearm fell, causing the hammer to strike a hard object, which caused an unintended and/or accidental discharge. (Docket No. 1-2 at ¶ 8).  Plaintiffs claim serious injuries to Trask's legs, hand, and finger; loss of A.T.'s finger, injury to her hand, and other injuries; along with accompanying medical bills, stemming from Defendant's alleged liability in manufacturing, assembling and selling a defective and unreasonably dangerous firearm.  (Docket No. 1-2 at ¶¶ 13, 17, 19, 22).  They maintain that Trask suffered great pain, disfigurement, mental anguish, the inability to enjoy the ordinary pleasures of life and his normal daily activities, and that he had to undergo hospitalization including numerous surgeries; A.T. had to undergo medical treatment, was disfigured, and suffered embarrassment, impaired health, and the inability to enjoy the ordinary pleasures of life and her normal daily activities; and Mrs. Trask has been deprived of the services, assistance, society, and consortium of her husband. (Docket No. 1-2 at ¶¶ 17, 20, 23, 25).

Plaintiffs' Complaint sounds in both negligence and strict liability.  Specifically, they aver that the Model 94 was defective in three ways: 1) the firearm malfunctioned and accidentally and/or unintentionally discharged without its trigger being depressed; 2) the firearm had an ineffective or defective safety device and was improperly designed, lacking the necessary equipment to make it safe; and 3) the firearm was not properly labeled with adequate warnings. (Docket No. 1-2 at ¶ 14–15).  Plaintiffs also assert that the Defendant was negligent in three ways: 1) in designing, manufacturing, assembling, and/or selling a firearm with inadequate and/or defective safety devices and measures; 2) in designing, manufacturing, assembling and/or

them."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)).

3

selling a firearm with a design which would permit it to accidentally discharge without the trigger being depressed; and 3) in failing to warn of such dangers. (Docket No. 1-2 at ¶ 19).

In subsequent filings related to the instant Motion to Amend, Plaintiffs make additional allegations which are discussed below and to which they point in further support of their Motion.

III. PROCEDURAL HISTORY

The Court held its initial Case Management Conference on April 26, 2012. (Docket No. 15). Subsequently, the Court issued a Case Management Order, (Docket No. 16), which set a deadline of July 6, 2012 for the parties to amend the pleadings. According to same, fact discovery was to be concluded by February 28, 2013. Due to disputes about its extent and scope,[4] discovery has been protracted.[5] Discovery was also delayed due to multiple changes in counsel.[6] Ultimately, the parties confirmed that fact and expert discovery was complete at a Telephonic Post Expert Discovery Status Conference held on July 30, 2015. (Docket No. 168).

---

[4] Throughout the course of discovery, the parties informed the Court of multiple issues, and moved for the enlargement of both fact and expert discovery. The Court found good cause and permitted these enlargements. (Docket Nos. 23, 24, 29, 40, 46, 62, 63, 120, 121, 122, 129, 130, 152, 155, 157, 162, 163, & 164).

[5] The Court notes, and as Plaintiffs state, "Olin Corporation has been selective about what documents it decides to produce in the cases against it. . . . [It appears that] the number of documents produced in this matter far exceeds the number of documents produced in any previous case against Olin/Winchester," (Docket No. 220 at 20), due in part to orders of this Court. The Court further acknowledges that the discovery, though extensive, is not out of proportion to the facts and circumstances in this case, including the claimed injuries and damages. Federal Rule of Civil Procedure 26(b)(1), which was recently amended, addresses proportionality.

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1) (emphasis added). Previously, proportionality was addressed at Rule 26(b)(2) and in particular Rule 26(b)(2)(C)(iii). Under either version of the Rules, the Court is to consider all of the facts and circumstances of the pending action. *See Bennett v. R&L Transfer, Inc.*, 2015 WL 9480104, at *3 (W.D. Pa. Dec. 29, 2015). *See also Johnson v. Johnson*, 2015 WL 9259405, at *1 (W.D. Pa. Dec. 18, 2015) (rulings regarding the scope of discovery are matters for the Court's discretion); 7 James W. Moore, Moore's Federal Practice § 37.22[2][d] (3d ed. 2010) (stating that when determining motions to compel discovery in which proportionality is at issue, courts should consider the totality of the specific circumstances presented in the particular case).

[6] (*See* Docket Nos. 21, 27, 39, 59, 60, 61, 66, 78, 83, 117, 123, & 208).

On the same date, Plaintiffs filed the present Motion for Leave to File Amended Complaint to Add Punitive Damages, (Docket No. 166), and a supporting Memorandum of Law. (Docket No. 167). Defendant responded and the parties continued to brief the issues, as noted above. The Court heard oral argument on Plaintiffs' Motion on November 2, 2015. (*See* Docket Nos. 211 & 219). Following same, the parties supplemented their briefing, with the last filing on January 27, 2016. (Docket Nos. 220, 224, & 227).

IV.     LEGAL STANDARDS

a.    Amending the Pleadings

A party seeking leave to amend the pleadings after the deadline set by the Court's Case Management Order must satisfy the requirements of Rule 16(b)(4) of the Federal Rules of Civil Procedure. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). A case management order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Good cause requires a demonstration of due diligence. *Race Tires Am., Inc.*, 614 F.3d at 84. "Many courts have recognized that '[w]here . . . the party knows or is in possession of information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.'" *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 119 (W.D. Pa. 2010) (Fischer, J.) (quoting *Price v. Trans Union, LLC*, 737 F.Supp.2d 276, 280 (E.D. Pa. 2010)).

Only after the moving party demonstrates good cause under Rule 16(b)(4) may the Court consider its Motion to Amend under Rule 15's standard. *See Race Tires Am., Inc.,* 614 F.3d at 84. Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "[M]otions to amend pleadings should be liberally granted."

5

*Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citations omitted). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Id.* (citing *Lorenz v. CSK Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Further, "[i]t is well-settled that prejudice to the non-moving party is the touchstone for the denial of [leave to file] an amendment." *Cornell & Co. v. Occupational Safety and Health Review Com'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted). "As to prejudice, the Court of Appeals has 'considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Graham*, 271 F.R.D. at 122 (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). "Given the liberal standard under Rule 15(a), 'the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility.'" *Id.* (quoting *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 700 (E.D. Pa. 2007)). The test under Rule 15(a) "is in the disjunctive, meaning that if [Defendants] meet[] [their] burden to prove any one of these elements, the [amendment] should not be permitted." *Id.* Further, the Court may grant parties leave to amend their pleadings to conform to the evidence. Leave may be granted even as late as during or after trial. *See* FED. R. CIV. P. 15.[7] *See also Werner v. Werner,* 267 F.3d 288, 297 (3d Cir. 2001)

---

[7] *Swiatek v. Bemis Co. Inc.*, 542 Fed. App'x 183, 188 (3d Cir. 2013).

> Rule 15(b) provides for the amendment of a complaint during and after trial under two circumstances. The first is when an objection requires that the complaint be amended in order to better facilitate the presentation of evidence on the merits of the claims. FED. R. CIV. P. 15(b)(1). The second is when the adverse party allows a claim to be tried by explicit or implicit consent. FED. R. CIV. P. 15(b)(2); *see Douglas v. Owens,* 50 F.3d 1226, 1235–36 (3d Cir. 1995); *Liberty Lincoln–Mercury, Inc. v. Ford Motor Co.,* 676 F.3d 318, 326–27 (3d Cir. 2012). The main consideration in determining whether leave to amend under Rule 15(b) should be granted is prejudice to the opposing party. *See United States v. Hougham,* 364 U.S. 310, 315, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960).

*Id.*

(plaintiffs granted leave to amend during pendency of appeal because plaintiffs obtained defendant's meeting minutes after district court dismissed the complaint); *ScanSource, Inc. v. Datavision–Prologix, Inc.,* 2009 WL 973497 (E.D. Pa. Apr. 8, 2009) (amendment allowed pleading to conform to evidence produced in discovery); *N'Jai v. E.P.A. et. al*, 2014 WL 6612899, at *4 n.7 (W.D. Pa. Nov. 20, 2014) (Fischer, J.) (pursuant to FED. R. CIV. P. 15(b)(2), after the conclusion of discovery, party may be able to amend pleadings to conform to the evidence).[8]

  b. Punitive Damages[9]

Under Pennsylvania law, "punitive damages are awarded for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." *Judge Technical Services, Inc. v. Clancy*, 813 A.2d 879, 889 (Pa. 2002) (quotations omitted). Thus, Pennsylvania law allows for punitive damages to be awarded where an actor's conduct was "malicious, wanton, willful, oppressive or exhibited a reckless indifference to the rights of others." *Johnson v. Hyundai Motor America*, 698 A.2d 631, 639 (Pa. Super. Ct. 1997).

In *Feld v. Merriam,* 485 A.2d 742 (1984), the Pennsylvania Supreme Court adopted the Restatement (Second) of Torts as to punitive damages, which allows for punitive damages to be

---

[8] The Court notes that Pennsylvania law is to the same effect. Indeed, Pennsylvania courts have also adopted a liberal standard for granting leave to amend pleadings.

> "Pleadings may be amended at the discretion of the trial court after pleadings are closed, while a motion for judgment on the pleadings is pending, at trial, after judgment, or after an award has been made and an appeal taken therefrom." *Biglan v. Biglan,* 479 A.2d 1021, 1025-1026 (Pa. Super. Ct. 1984). "Our courts have established as parameter a policy that amendments to pleadings will be liberally allowed to secure a determination of cases on their merits." *Gallo v. Yamaha Motor Corp.,* 484 A.2d 148, 150 (Pa. Super. Ct. 1984). A trial court enjoys broad discretion in evaluating amendment petitions. *Horowitz v. Universal Underwriters Ins. Co.,* 580 A.2d 395, 398 (Pa. 1990), *allocatur denied,* 590 A.2d 297, and 590 A.2d 298 (Pa. 1991).

*Capobianchi v. BIC Corp.*, 666 A.2d 344, 346 (Pa. Super. Ct. 1995).

[9] During oral argument, (Docket No. 211 & 219), the Court asked the parties to address the choice of law issue in the instant matter. The parties did so through supplemental briefing. (*See* Docket Nos. 220 at 2 & 224 at 2 (stating neither disputes Pennsylvania law applies)).

awarded for outrageous conduct or the reckless indifference to the rights of others.[10] The

Pennsylvania Supreme Court, in *SHV Coal Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 704 (Pa.

1991), further clarified the standard, stating:

> Comment a to Section 500 describes two distinct types of reckless conduct
> which represent very different mental states: (1) where the "actor knows, or
> has reason to know, ... of facts which create a high degree of risk of physical
> harm to another, and deliberately proceeds to act, or to fail to act, in conscious
> disregard of, or indifference to, that risk;" and (2) where the "actor has such
> knowledge, or reason to know, of the facts, but does not realize or appreciate
> the high degree of risk involved, although a reasonable man in his position
> would do so."

*Accord Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (quoting *Hutchison v. Luddy*,

870 A.2d 766, 771 (Pa. 2005)).  Punitive damages are thus available if either scenario applies.

Plaintiffs, when pursuing punitive damages under a reckless indifference theory, as in this

case, must demonstrate that an actor knew, or had reason to know, of facts that created a high

degree of risk of physical harm.  Plaintiffs must show that the actor nevertheless also deliberately

proceeded to act or fail to act in conscious disregard of, or indifference to, that risk of physical

harm. *Brown v. Johnson & Johnson*, 64 F.Supp.3d 717, 724 (E.D. Pa. 2014) (citing *Martin v.*

*Johns–Manville Corp.,* 494 A.2d 1088, 1097 (1985) (plurality opinion)).  As such they must put

---

[10] Section 908(2) of the Restatement states:

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil
> motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier
> of fact can properly consider the character of the defendant's act, the nature and extent of the harm
> to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

The Pennsylvania Bar Institute's Pennsylvania Suggested Standard Civil Jury Instructions for punitive damages
parallels the Restatement:

> If you find that the conduct of defendant was outrageous, you may award punitive
> damages, as well as any compensatory damages, in order to punish the defendant for [his] [her]
> conduct and to deter the defendant and others from committing similar acts.
> A person's conduct is outrageous when it is malicious, wanton, willful, or oppressive, or
> shows reckless indifference to the interests of others.

1 PENNSYLVANIA BAR INSTITUTE, PENNSYLVANIA SUGGESTED STANDARD CIVIL JURY INSTRUCTIONS 8.00 (Civ.)
(4th ed. 2015).

> Given this case is before the Court on diversity jurisdiction, and because the parties have agreed that
> Pennsylvania law is applicable, the Court's charge to the jury will model the Pennsylvania Bar Institute's
> Pennsylvania Suggested Standard Civil Jury Instructions.  The Court notes that the Third Circuit's Model Jury
> Instructions 2015 Edition speaks to the standard for punitive damages in federal claims.  *See* THIRD CIRCUIT, MODEL
> JURY INSTRUCTIONS CIVIL §§ 4.8.3, 5.4.2, 6.4.2, & 9.4.2 (2015).

forth evidence of the defendant's culpable state of mind.  *See Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 360 (3d Cir. 2015) ("[T]o justify an award of punitive damages, the fact-finder must determine that the defendant acted with a culpable state of mind, *i.e.*, with evil motive or reckless indifference to the rights of others." (quoting *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983–84 (Pa. Super. Ct. 2005))).

V.   DISCUSSION

a.   Overview of Plaintiffs' Arguments

Plaintiffs' primary argument in support of their Motion to Amend is that through discovery, they learned that Defendant knew for decades before Plaintiffs' injuries that the Model 94 was defective but still sold the gun and did not warn of the potential for harm.  (Docket No. 167 at 1, 12-13, 17-18; Docket Nos. 206 & 207).  Plaintiffs assert that they have acted with due diligence, given that Defendant has produced and they have reviewed over 500,000 pages of documents in the course of discovery.  (Docket No. 167 at 4).  They also contend, as they must, that there is no prejudice to Defendant, bad faith or undue delay in their bringing this motion, nor futility in seeking amendment at this time.  (Docket No. 167 at 4).

Plaintiffs aver that punitive damages are appropriate in the instant case given Defendant manufactured and sold the Model 94 even though it knew that it had a propensity to unintentionally discharge.   (Docket No. 167 at 6).   They state that the Model 94 can unintentionally discharge from any of its hammer positions, including the supposedly "safe" position.  (Docket No. 167 at 6, 13-15).  In relation to the Model 94's "safety" position, Plaintiffs point out that the firearm did not incorporate a mechanical barrier safety and, therefore, could discharge due to being dropped, bumped, or jarred.  (Docket No. 167 at 7).  Plaintiffs indicate that they have identified fifty-four (54) other cases where there was an injury or death that was

claimed to be a result of a Model 94 unintentionally discharging after being dropped, bumped, or jarred, including instances when the gun was in the "safety" position. (Docket No. 167 at 16; Docket No. 167-6). For these reasons, Plaintiffs argue that the Model 94 did not have a true "safety" position and that Defendant knew that to be true. (Docket No. 167 at 7).

Plaintiffs, thus, allege that Defendant was aware of the Model 94's defective condition long before it was manufactured in 1968.[11] (Docket No. 167 at 8). To support their allegation, Plaintiffs refer to Major Joel W. Cloudman's letter to Oliver Winchester, dated March 15, 1865, in which he wrote that firearms that do not contain a half-cock are safer than those that do. (Docket No. 167 at 8; Docket No. 167-13). Similarly, Plaintiffs point to more modern times when Defendant explored improving the gun's safety. (Docket No. 167 at 8; Docket No. 167-14). Plaintiffs contend that Olin never incorporated a safer mechanism that it had previously explored. (Docket No. 167 at 8; Docket No. 190 at 1). Plaintiffs also maintain that Olin was aware that the Model 94 could unintentionally discharge when dropped because of its own prior testing. (Docket No. 167 at 9). With this background, Plaintiffs assert that Defendant continued to manufacture and sell the Model 94, even though it knew that it was dangerous and could cause death or serious injury when it was foreseeably dropped. (Docket No. 167 at 10). Accordingly, Plaintiffs urge that there is a sound basis for amending their Complaint, given that there is "evidence that [Defendant] actually realized the risk and acted in conscious disregard or indifference to it." *Burke v. Maassen*, 904 F.2d 178, 182 (3d Cir. 1990). (Docket No. 167 at 10).

Plaintiffs further assert that Defendant failed to issue a warning after the Model 94 was first sold in 1968, even though it possessed allegedly overwhelming evidence that said model was defective and unreasonably dangerous. (Docket No. 167 at 11, 13). Plaintiffs cite *Walton v.*

---

[11] In his June 15, 2015 expert report, Michael Knox compiled a chronology of events to show that Defendant had knowledge of the half-cock unintended discharge defect. (Docket No. 167-8 at 30-33). This chronology details events from 1855, 1870, 1899, 1900, 1907, 1909, 1976-78, 1978-80, 1992, 1993, and 2014.

*Avco Corp.*, 610 A.2d 454 (Pa. 1992), in which the Pennsylvania Supreme Court held that a helicopter manufacturer had "an independent duty to warn, derived from its knowledge of the defect in the [helicopter's] engine." *Walton*, 610 A.2d at 458. The Supreme Court further opined that "[i]t has long been the law in Pennsylvania that a 'defective condition' includes the lack of adequate warnings or instructions required for a product's safe use." *Walton*, 610 A.2d at 458. Accordingly, Plaintiffs contend that Defendant's conduct was not merely negligent, but was "reckless, wanton, willful, and outrageous. . . ." (Docket No. 167 at 19).

   b.   Overview of Defendant's Arguments

Defendant's main argument against granting Plaintiffs leave to amend is that the proposed Amended Complaint would be futile because Plaintiffs cannot establish liability under what they deem a new theory—that it violated a "post-sale duty to warn." (Docket No. 183 at 1-2). Defendant contends this theory fails because there is no factual basis or causal nexus for such a claim and because Defendant, under Pennsylvania law, did not owe such duty to Trask. (Docket No. 183 at 2). Defendant also argues that Plaintiffs' proffered evidence does not satisfy the legal threshold for an award of punitive damages under Pennsylvania law. To that end, Defendant points out that Plaintiffs do not provide details of other instances that they now allege are substantially similar to the instant case. (Docket No. 183 at 2-3).

In further support of its futility argument, Defendant, cites *Conti v. Ford Motor Co.*, 743 F.2d 195, 198 (3d Cir. 1984), which holds that "where the theory of liability is failure to warn adequately, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to the jury." *See also Pavlik v. Lane Ltd./Tobacco Exporters Intern.*, 135 F.3d 876, 881 (3d Cir. 1998). Defendant also cites *Powell v. J.T. Posey Co.*, 766 F.2d 131,

135 (3d Cir. 1985), in which the Court of Appeals for the Third Circuit reversed a judgment in favor of a plaintiff on a jury verdict on a failure to warn claim where the district court denied motions for directed verdict, judgment notwithstanding the verdict, and, in the alternative, for a new trial. Notably, the Court of Appeals in *Powell* expressly found that the plaintiff would have acted the same with or without a warning. *Powell*, 766 F.2d at 135. Defendant also cites *Overpeck v. Chicago Pneumatic Tool Co.*, 823 F.2d 751, 755 (3d Cir. 1987), where the Third Court reiterated that under Pennsylvania law, a plaintiff must "demonstrate that an adequate warning would have modified his or her behavior so as to avoid injury." (Docket No. 183 at 6). Defendant's argument here is similar—a warning would not have affected Trask's behavior or prevented injury, due to his experience with and knowledge of firearms. (Docket No. 183 at 6-7). In essence, Defendant asserts that Trask, even if adequately warned about the gun's latent defect, would have ignored such warnings.[12]

Responding to Plaintiffs' assertion that Trask's firearm experience and his knowledge of gun safety do not mean that he would have acted the same way had he been advised of the Model 94's propensity to unintentionally discharge, (Docket No. 190 at 4), Defendant states that even if Trask did not know the specific mechanism that would cause the gun to misfire, he knew that it was possible. (Docket No. 195 at 2-3). Defendant maintains that this was apparent because of actions Trask took to prevent the gun from falling. (Docket No. 195 at 2).

Turning to Plaintiffs' theories of liability, Defendant asserts that Pennsylvania simply does not recognize a post-sale duty to warn for mass produced products. (Docket No. 183 at 8). Defendant relies on *Walton v. Avco Corp.*, 557 A.2d 372, 379 (Pa. Super. Ct. 1989), *rev'd in part on other grounds*, 610 A.2d 454 (Pa. 1992), in which the Superior Court of Pennsylvania held

---

[12] In its *Daubert* challenge, Defendant made similar arguments which the Court has addressed. (*See* Docket No. 234 at 24-25).

that a manufacturer of helicopters had a duty to provide post-sale warnings, but that said duty did not extend to mass produced items. (Docket No. 183 at 8). Specifically, the Court stated that "[i]t would place an unreasonable duty upon these manufacturers if they were required to trace the ownership of each unit sold and warn annually of new safety improvements over a 35 year period." *Walton*, 557 A.2d at 379 (quoting *Kozlowski v. John E. Smith's Sons Co.*, 275 N.W.2d 914, 924 (Wis. 1979)). Defendant maintains that the Supreme Court of Pennsylvania, in *Walton*, 610 A.2d at 459, upheld the Superior Court's ruling on the post-sale duty to warn. (Docket No. 183 at 9). There, the Supreme Court stated that the post-sale duty to warn applied because helicopters could not "get swept away in the currents of commerce" and become impossible to track or locate. *Walton*, 610 A.2d at 459. Defendant distinguishes the sale of helicopters from the sale of guns and, under *Walton*, asserts that its holding implies manufacturers and sellers do not have a concomitant post-sale duty to warn regarding mass produced products. (Docket No. 183 at 9).

In support of its position, Defendant states that the rifle at issue was mass produced, and thus, is not easily traceable. (Docket No. 183 at 9). Indeed, Trask was the third owner of the subject Model 94, which was originally sold in 1968. (Docket No. 195 at 2-3). As such, Defendant argues it was the very type of product that, in the language of *Walton*, can be "swept away in the currents of commerce" and "impossible to track or difficult to locate," *Walton*, 610 A.2d at 459, and perhaps not the type of product that should carry a post-sale duty to warn. (Docket No. 183 at 8-9). Defendant further asserts that, unlike other industries where products are easily found post-sale, there is not a central registry of firearm owners. Given same, it did not have a "readily available means of communicating directly with current owners." (Docket

No. 183 at 10). Defendant's position therefore remains that, as to the Model 94, there can be no post-sale duty to warn under Pennsylvania law.

c. Good Cause

A case management order may only be modified for good cause, which requires a demonstration of due diligence. FED. R. CIV. P. 16(b)(4); *Race Tires Am., Inc.*, 614 F.3d at 84. Plaintiffs, in presenting their Motion for Leave to Amend, have articulated good cause. They have exhibited due diligence as required by Rule 16(b)(4) in seeking leave to amend as soon as practicable, once fact discovery concluded. Here the Court notes that defendants often challenge punitive damages in summary judgment proceedings arguing that there are insufficient facts to support such claims. *See, e.g., Vitalis v. Sun Constructors, Inc.*, 481 Fed. App'x 718, 728-29 (3d Cir. 2012); *Manfred v. Nat'l R.R. Passenger Corp.*, 106 F.Supp.3d. 678, 689 (W.D. Pa. 2015) (Fischer, J.). Here, Plaintiffs are seeking leave, in part, due to the fact that discovery yielded new information on a "feasible safer alternative design in 1950," that was neither available to them, at the time of filing the complaint, nor that had been a part of previous litigation. (Docket No. 220 at 19-20). Plaintiffs also learned through discovery about Defendant's knowledge of the gun's latent defect at the time of sale and information on Defendant's testing of the gun. (Docket No. 167 at 8-10).

The instant matter is comparable to *Gaston v. Caugherty*, 2015 WL 8601232, at *6 (W.D. Pa. Dec. 14, 2015), in which this Court found good cause for a plaintiff to amend in order to cure possible pleading deficiencies as attacked by motions to dismiss, even though the deadline for doing so had passed. It is also similar to *Wainwright v. City of Sharon*, 2016 WL 110015, at *4 (W.D. Pa. Jan. 11, 2016), wherein this Court found good cause when plaintiffs, after the deadline to amend the pleadings in their case had expired, were seeking "merely to utilize facts adduced

during discovery to clarify and refine their claims in response to the deficiencies highlighted in Defendants' motion." Like the plaintiffs in *Gaston* and *Wainwright*, Plaintiffs have shown good cause why the Court should grant them leave to amend after the deadline established in the Court's Case Management Order. The fact that A.T. is a minor who sustained substantial and life-long injuries lends further support to the Court's finding of good cause to permit Plaintiffs to amend.

### d. Rule 15

Despite Defendant's arguments to the contrary, Plaintiffs not only satisfy Rule 16, but they also satisfy Rule 15, as they must. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Court will address these grounds, in turn.

### i. Futility

"Futility" challenges an amendment's legal sufficiency. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997). In assessing futility, courts apply the same standard of legal sufficiency as applied under Federal Rule of Civil Procedure 12(b)(6).[13] *In re Burlington Coat Factory Sec. Litig.,*114 F.3d 1410, 1434 (3d Cir. 1997); *see also Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir. 1988) (futility determined by

---

[13] The Court notes that, in regards to the claims for punitive damages, it likewise is helpful to consider the factors to dismiss a case for failure to prosecute under Federal Rule of Civil Procedure 41(b) as stated in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). In determining whether dismissal is warranted, this Court must consider the following factors: 1) the extent of the party's personal responsibility; 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; 3) a history of dilatoriness; 4) whether the conduct of the party or the attorney was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal; and 6) the meritoriousness of the claim or defense. It is well-settled that, although a court must weigh each of the six factors, it is not necessary to find that all six factors are present prior to dismissing the action. *See Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir. 1988). Nevertheless, upon examining the six *Poulis* factors as if there were a motion to dismiss for failure to prosecute, Plaintiffs' claims for punitive damages would stand. Thus, this analysis also supports granting leave to Plaintiffs to amend their Complaint.

considering whether the amendment would survive a renewed motion to dismiss). Thus, an amendment would be futile if the proposed Complaint fails to state a claim upon which relief could be granted. *Suley v. Borough*, 2011 WL 860426, at *2 (W.D. Pa. Mar. 9, 2011).[14]

Plaintiffs' proposed amendment is not futile, even if they were not able to proceed on a post-sale duty to warn theory, which is discussed below, given that they have set forth multiple scenarios by which punitive damages may be awarded under the alleged facts. As noted, Plaintiffs make claims in both products liability and strict liability. The liability theories Plaintiffs present are broader than simply whether there is a post-sale duty to warn as to mass produced products. Plaintiffs maintain that the gun should have had a warning at the time of manufacturing and sale. It is undisputed that the 1968 version of the owner's manual did not warn consumers about any hazards pertaining to accidental discharge from the rifle, despite what Plaintiffs maintain was sufficient knowledge to warn.[15] (*11/2/15 Hr'g*, Docket No. 233 at 112-

---

[14] For a thorough discussion on the standard of legal sufficiency as applied under Federal Rule of Civil Procedure 12(b)(6), see *Sloane v. Gulf Interstate Field Services, Inc.*, 2016 WL 878118, at *2 (W.D. Pa. Mar. 8, 2016) (Fischer, J.).

[15] The Pennsylvania Supreme Court adopted § 402A of the *Restatement (Second) of Torts* in the case of *Webb v. Zern* in 1966. *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966). This section states:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>> (a) the seller is engaged in the business of selling such a product, and
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965). Relative to the discussion at hand, Comments g and j are pertinent. *"Defective condition.* The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." Restatement (Second) of Torts § 402A cmt. g (1965).

> *Directions or warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. . . . Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

Restatement (Second) of Torts § 402A cmt. j (1965).

13); (Powell SSEC Engineering Report Oct. 14, 2013, Docket No. 167-1 at ¶ 6.20). Plaintiffs' alternative theories include the allegation that despite awareness of the firearm's propensity to unintentionally discharge, even when the gun was in the supposedly "safe" position, Defendant continued to manufacture and sell the firearm. (Docket No. 166-1 at ¶ 16; Docket No. 167 at 6). Plaintiffs also assert that Defendant was aware of the gun's defect for many years, even before this particular model was manufactured, and that it chose not to implement a safer alternative to address the alleged defect. (Docket No. 167 at 8-9). Thus, Plaintiffs aver that Defendant realized the risk and disregarded it or was indifferent to it. (Docket No. 167 at 10).

Defendant responds that Plaintiffs have not met their burden by setting forth evidence that Defendant subjectively appreciated the risk of harm to which Plaintiffs were allegedly exposed, and that in conscious disregard of that risk it failed to act. (Docket No. 183 at 19). The Court disagrees. As the Court must take all facts alleged in the proposed amended complaint as true, and draw all reasonable inferences from such allegations in favor of the plaintiffs, based on the record before this Court,[16] it appears there is sufficient evidence in the record[17] from which a jury could find that the Defendant had actual knowledge, or should have had knowledge, of the risk imposed upon the safety of another, and, acted, or failed to act, in conscious disregard for the risk. *SHV Coal Inc.*, 587 A.2d at 704. *See also Warren Gen. Hosp. v. Amgen Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (stating that in reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), the court accepts all factual allegations true and that it construes the complaint in the light most favorable to the plaintiff).

---

[16] (*See* Docket Nos. 166, 166-1, 167, 182, 183, 190, 195, 206, 207, 209, 220, 224, & 227).
[17] The Court has had the benefit of not only the instant motion and briefing, but has also had the benefit of the motions, attendant briefing, exhibits, and hearing and oral argument on Defendant's *Daubert* Motions as well as Trask's complete deposition transcript.

Even relative to the alleged post-sale duty to warn theory, Plaintiffs' claim may not be futile given that a fact-intensive analysis is necessary to determine whether Defendant had a duty to warn.[18] *Walton* is not a blanket prohibition. It has to be understood on its facts and the time period in which it was handed down.

> Post-*Walton,* other Pennsylvania courts have continued to recognize the distinction between circumstances in which a plaintiff attempts to impose a post-sale duty to warn where the product was defective from the date of the manufacture and where the manufacturer had notice of the defect and those in which the product was not defective at the time of the sale. *See Sullivan v. Modern Group, Ltd.,* 46 Pa. D. & C. 4th 524, 531 (Pa. Ct. Com. Pl. 2000) ("The most important distinction between [*Walton* ] and [*Lynch* ] is that in *Walton* ... the product was detective from the date of the manufacture and where the manufacturer had notice of the defect .... [i]n Lynch, the product was not defective at the time of the sale"); *DeSantis v. Frick,* 745 A.2d 624, 630 (Pa. Super. Ct. 1999) ("This Court has ruled that no post-sale duty to warn exists where no defect existed in the product at the time of sale.").

*Padilla v. Black & Decker Corp.*, 2005 WL 697479, at *5 (E.D. Pa. Mar. 24, 2005). Thus, it would appear that in certain circumstances, Plaintiffs may proceed on a post-sale duty to warn theory. *Id*. at *6. As pointed out in *Padilla*, additional material questions of fact that may remain could include, "whether the product was defective at the time it left the hands of the manufacturer, whether the manufacturer subsequently became aware of that defect, whether the goods are sold in a small or distinct market, and whether the establishments that service the product are convenient and logical points of contact." *Padilla*, 2005 WL 697479, at *6 (quotations omitted). The *Padilla* Court reiterates that "[i]t appears that the most important of these questions, for purposes of determining whether a cause of action for post-sale failure to warn will lie under Pennsylvania law, is whether the [manufactured product] had a latent defect at the time of sale." *Id*. Here, the record supports a claim of latent defect.

---

[18] Given the kind of fact-intensive determination which is required of this Court, Defendant's argument may be more appropriately made by way of a motion for summary judgment or in support of a Rule 50 motion at trial.

While the Court acknowledges that Pennsylvania courts have refused to adopt Section 10 of the Restatement (Third) of Torts,[19, 20] *see DeSantis v. Frick Co.*, 745 A.2d 624, 626-32 (Pa. Super. Ct. 1999) (discussing reasons for declining to adopt Section 10), Pennsylvania courts have stated that there is a post-sale duty to warn when the product was defective when sold.[21] *See Walton*, 610 A.2d, 459 (finding a post-sale duty to warn where a helicopter's engine was defective when sold); *see also DeSantis*, 745 A.2d at 631 (holding that defendant manufacturer did not have a duty to warn when a product was not defective when sold).

---

[19] Section 10, Liability of Commercial Product Seller or Distributor for Harm Caused by Post-Sale Failure to Warn, of the Restatement (Third) of Torts, states:

> (a) One engaged in the business of selling or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning.
> (b) A reasonable person in the seller's position would provide a warning after the time of sale if:
> > (1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
> > (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and
> > (3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and
> > (4) the risk of harm is sufficiently great to justify the burden of providing a warning.

[20] Given the pronouncement in *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014), rejecting application of the Restatement (Third) of Torts: Products Liability, the Court also looked to California law as the Supreme Court of Pennsylvania, in initially adopting strict liability looked to California precedent. To that end, *Lunghi v. Clark Equipment Co.*, 200 Cal. Rptr. 387, 391 (Cal. Ct. App. 1984), wherein the court, in addressing inadequate jury instructions, commented on the failure to warn or inadequate warning as a design defect. The court also noted that even if the jury had been properly instructed, and even if it did not find mechanical design defects, "it could still have found that [defendant's] knowledge of the injuries caused by these features imposed a *duty to warn* of the danger, and/or a *duty to conduct an adequate retrofit campaign.*" *Id.* at 392 (emphasis in original). *See also Hensley-Maclean v. Safeway, Inc.*, 2014 WL 1364906, at *5-6 (N.D. Cal. Apr. 7, 2014) (quoting *Lunghi* in regards to a "*duty to warn*" and an "*adequate retrofit campaign*" and stating that "[t]hus, Lunghi [sic] also recognizes that a seller's duty of ordinary care does not necessarily terminate at the point of sale . . . ." and that "numerous California decisions have explicitly or implicitly recognized that a seller's duty under negligence may extend beyond the point of sale.").

[21] The Court also looked to the laws of the other potentially involved states. *See infra* p. 1. The Court notes that based on its limited research, there is no indication that Missouri will adopt the Third Restatement at this time. *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.3d 47, 64-65 (Mo. 1999); *Stanger v. Smith & Nephew, Inc.*, 401 F.Supp.2d 974, 982 (E.D. Mo. 2005). Similarly, the Supreme Court of Virginia has never formally adopted the post-sale duty to warn of dangers that become apparent after the initial sale. *See Russell v. Wright*, 916 F.Supp.2d 629, 650 (W.D. Va. 2013). However, in *McAlpin v. Leeds & Northrup, Co.*, 912 F. Supp. 207, 210-11 (W.D. Va. 1996), the court found that under a negligence theory, manufacturers have a duty to warn when they learn of product defects. Similarly, in *Rash v. Stryker Corp.*, 589 F.Supp.2d 733, 735-36 (W.D. Va. 2008), the district court found "that the Supreme Court of Virginia would allow a cause of action based on a negligent breach of a post-sale duty to warn to proceed. The Restatement (Third) of Torts: Products Liability § 10 (1998), the view of other states, and dicta from the Fourth Circuit's opinion in *Bly v. Otis Elevator Co.,* 713 F.2d 1040 (4th Cir.1983), support this determination."

As consumers are more connected to sellers in the internet age, the duty to warn may be enlarged. *See* Bryant Walker Smith, *Proximity-Driven Liability*, 120 GEO. L.J. 1777, 1779, 1802-03 (2014) (discussing how rationales for limiting post-sale duties to warn may be reduced as commercial sellers have greater knowledge about the consumers who purchase their products and as consumer products are increasingly connected to larger digital networks). Moreover, just as there are "establishments that service helicopters" that "are convenient and logical points of contact," there may also be logical points of contact for hunters and sportsmen. *Walton*, 610 A.2d at 459. For instance, the Court notes that like helicopters, guns are also serviced. Businesses that service guns are logical and convenient locations through which gun manufacturers can contact customers.

Gun manufacturers can also connect to their customers through magazines, gun shows, hunting clubs, sporting goods and other stores that sell ammunition, television advertisements during hunting shows, hunting websites, social media, the Bureau of Alcohol, Tobacco, Firearms and Explosives' website or newsletters, or even their own websites. *See also* Kenneth Ross, *Post-Sale Duty to Warn: A Critical Cause of Action*, 27 WM. MITCHELL L. REV. 339, 355 (2000) (discussing various ways in which manufacturers can warn of hazards). In fact, on October 2, 2014, Defendant issued a warning on its website.[22] Olin also published this warning in trade publications, including the December 2014 edition of American Rifleman magazine. (*Powell Report 6/15/15* at 2, Figure 1, Docket No. 191-3). Similarly, the Model 94 may not be the type of product that "get[s] swept away in the currents of commerce," *Walton*, 610 A.2d at 459, as it

---

[22] Olin warned about its Model 94 and other firearm models advising consumers that "when there is a live cartridge in the chamber, dropping, jarring or bumping the firearm may cause accidental discharge. . . ." *See* PRODUCT SAFETY NOTICE – WARNING, Winchester 94: Product Safety Notice, *WINCESTER® Model 94 Family of Level-Action Rifles, Carbines, and Muskets with Half-Cock Safety*, *available at*: http://www.winchester.com/library/news/Pages/model-94-warning.aspx (last visited Mar. 25, 2016); (*Powell Report 6/15/15*, Docket No. 191-3 at 13).

has a serial number by which it can be identified. (Docket No. 1-2 at ¶ 7). *See also* Tom Stilwell, *Warning: You May Possess Continuing Duties After the Sale of Your Product! (An Evaluation of the Restatement (Third) of Torts: Products Liability's Treatment of Post-Sale Duties)*, 26 REV. LITIG. 1035, 1054-55 (2007) ("Sales of machinery, vehicles, or durable goods will likely possess information such as serial numbers, registration data, warranty information, or dealer records that will aid in tracing purchasers or current users.").

In light of the above analysis, the Court believes that the record is such that amendment is not futile and is proper. The Court now turns to the remaining considerations under Rule 15.

### ii. Undue Delay, Bad Faith, Dilatory Motive, and Prejudice

In regards to prejudice, "the Court of Appeals has 'considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or theories.'" *Graham*, 271 F.R.D. at 123 (quoting *Cureton*, 252 F.3d at 273). Further, "[u]nder Rule 15(a), 'prejudice' means 'undue difficulty in prosecuting [or defending] a lawsuit as a result of a change of tactics or theories on the part of the other party.'" *Pohl v. U.S. E.P.A.*, 2010 WL 2607476, at *6 (W.D. Pa. June 25, 2010) (quoting *Johnson v. GEICO Cas. Co.*, 673 F.Supp.2d 244, 251 (D. Del. 2009)). Plaintiffs' Amended Complaint should not cause Defendant and its counsel undue difficulty in preparing for trial. The Court is likely to bifurcate liability and damages.[23] The allegations supporting their claim for punitive damages are based on discovery of evidence now known to both parties. Moreover, fact discovery is complete and expert discovery is largely, if not totally, complete. Further, summary judgment motions and

---

[23] The Third Circuit has stated, quoting Wright & Miller, *Federal Practice and Procedure*, that "[t]he district court is given broad discretion in reaching its decision whether to separate the issues of liability and damages." *Idzojtic v. Penn. R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972). The Third Circuit has also noted that "[s]everance of the question of liability from other issues can 'reduce the length of trial, particularly if the severed issue[s] [are] dispositive of the case, and can also improve comprehension of the issues and evidence.'" *In re Paoli R.R. Yard PCB Litigation*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) (quoting *Manual for Complex Litigation, Third* § 21.632, at 119 (West 1995)) (changes in original). *See Gucker v. U.S. Steel*, 2:13-cv-583-NBF, Docket No. 129 (W.D. Pa. Jan. 22, 2016) (Fischer, J.) (order bifurcating trial between liability and damages).

trial have not been scheduled. Thus, Defendant is not prejudiced as it will likely make similar arguments as presented here on a complete pretrial or trial record and will be afforded a full and fair opportunity to pursue those arguments.

Addressing delay, Plaintiffs' Motion was made on July 30, 2015, which, as stated above, was the same day that the parties jointly confirmed that all discovery had ended. (Docket No. 168). Similarly, the record does not support the motion being brought with dilatory intentions. Finally, there is no bad faith that the Court can find or that is argued on this record.

As this Court reads the record, this case presents not only issues of law to be addressed, but also genuine issues of material fact. Thus, this case shall proceed on Plaintiffs' Amended Complaint.

VI.    CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion for Leave to Amend will be GRANTED. An appropriate order follows.


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


Dated:  March 31, 2016

cc/ecf:  All counsel of record